THE PEOPLE OF THE STATE OF NEW YORK ex rel. MEDICAL SOCIETY OF THE COUNTY OF KINGS, Respondent, *v.* BARZILLAI G. NEFF and Others, Constituting the Board of Assessors of the City of Brooklyn, Appellants.

*Taxation — medical society organized under chapter 94 of the Laws of 1813 — it is not exempt from taxation under chapter 498 of the Laws of 1893.*

A medical society, organized under chapter 94 of the Laws of 1813, entitled "An act to incorporate medical societies, for the purpose of regulating the practice of physic and surgery in this State," which maintains a medical library open to the public, and furnishes rooms for the meeting of medical or charitable societies — being, in effect, a medical club house where the members of the medical profession meet for "mental improvement," and such incidental benefits as flow from an association and co-operation of effort — and which alleges that it has "established, in the city of Brooklyn, an organization for mental improvement and for certain educational and charitable purposes," unaccompanied by any further allegation, and fails to allege that it is organized for the exclusive purpose of carrying out any of these objects, and makes no claim that the purpose of the society is to improve the morals of either men or women, or that it is for religious, missionary, hospital, patriotic, historical or cemetery purposes, is not entitled to exemption from the payment of taxes under the provisions of chapter 498 of the Laws of 1893.

APPEAL by the defendants, Barzillai G. Neff and others, constituting the board of assessors of the city of Brooklyn, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 15th day of March, 1898, granting the relator's motion for a peremptory writ of mandamus commanding the defendants to cancel all taxes

84    PEOPLE ex rel. MEDICAL SOCIETY *v.* NEFF.

SECOND DEPARTMENT, NOVEMBER TERM, 1898.    [Vol. 34.

levied and imposed for the years 1893, 1894, 1895, 1896 and 1897, upon property owned by the relator.

*Almet F. Jenks,* for the appellants.

*Jesse W. Johnson,* for the respondent.

WOODWARD, J.:

The relator, the Medical Society of the County of Kings, seeks to be relieved of the duty of paying taxes upon certain property situated at 356 Bridge street, borough of Brooklyn, under the provisions of chapter 498 of the Laws of 1893. For this purpose it petitioned the Supreme Court in this department, praying for a peremptory writ of mandamus to the assessors of the city of Brooklyn, directing them to cancel the taxes levied against the relator in the years 1893, 1894, 1895, 1896 and 1897. This writ was granted, and from the order granting the same appeal comes to this court.

Section 1 of chapter 498 of the Laws of 1893 provides that "The real property of a corporation or association organized exclusively for the moral and mental improvement of men and women or for religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes, shall be exempt from taxation." I shall assume, for the purposes of this discussion, that the assessors have the power to cancel the taxes levied, and that mandamus was the proper remedy to invoke, and will simply inquire whether the facts set forth in the petition of the relator are sufficient to bring it within the provisions of this statute.

The petition recites that the petitioner is duly organized under the provisions of chapter 94 of the Laws of 1813, entitled "An act to incorporate medical societies for the purpose of regulating the practice of physic and surgery in this State;" that it has "established in the city of Brooklyn an organization for mental improvement and for certain educational and charitable purposes;" that "such society maintains a public medical library and a free public medical reading room; both open to the public every day in the year, Sundays and holidays excepted; maintains an auditorium in which are regularly held medical meetings where papers of interest

to the medical fraternity in general, and which are prepared for the purpose of furthering the science of medicine, are presented and discussed. The society offers its rooms to, and seven separate and distinct medical societies regularly meet in and use such rooms, for all of which no money is asked or paid. The staff association of the Kings County Medical Hospital, a charitable organization, regularly meets here; the Alumni Association of St. Mary's Hospital meets there. No member of this society receives any salary or compensation whatever." The petition further recites that the president of the society acts in an advisory character to the mayor and commissioners of health in case of epidemic, and that its committee on hygiene makes suggestions, and that it affords a place for the meeting of the national, medical and public health societies, and that it has no source of income except such as is derived from the annual dues of the members. It is further alleged that the society " maintains a directory for nurses and makes no charge therefor, excepting such charge as is sufficient to cover the expenses of maintaining the same," and that " this society also maintains a medical journal, the organ of the society, from which no income is derived." The remaining allegations relate to the location of the property, etc., and have no bearing upon the question involved in the present proceeding.

I am unable to see how the relator comes within the provisions of the statute. Exemptions from taxation are not favored; the theory of the law is that all property shall pay its just proportion of the public burdens, and it is only in those cases where the property is put to some use calculated to minimize the expenses of government that public policy justifies an exemption. There are no presumptions in favor of an exemption of property of any kind, and the burden of establishing the right is upon the person claiming such exemption.

Chapter 498 of the Laws of 1893, under which the relator claims an exemption, so far as requisite, has been already set out.

The petitioner avers that it " was duly organized," and that it " has established in the city of Brooklyn an organization for mental improvement and for certain educational and charitable purposes." This is most commendable in the gentlemen making up the Medical Society of the County of Kings, but it does not entitle them to exemption from taxation under the laws of this State. There is no

86    PEOPLE ex rel. MEDICAL SOCIETY v. NEFF.

SECOND DEPARTMENT, NOVEMBER TERM, 1898.          [Vol. 34.

allegation that the society is organized for the exclusive purpose of carrying out any of these objects, and, if there was, it would still fall short of the requirements. The statute demands that the association shall be organized not only for mental, but for moral improvement, and it requires, moreover, that it shall be for the " moral and mental improvement of men and women." This is not alleged. There is no claim that the purpose of this society is to improve the morals of either men or women, or that it is for religious, missionary, hospital, patriotic, historical or cemetery purposes. The general law (1 R. S. pt. 1, chap. 13, tit. 1, § 4, subd. 3), as amended in 1883 (Chap. 397), exempts " every building erected for the use of a college, incorporated academy or other seminary of learning, and in actual use for either of such purposes, every building for public worship," etc. The Consolidation Act (Laws of 1882, chap. 410, § 827) makes these provisions inapplicable to any such building for public worship, and any such school house or other seminary of learning in the city of New York, " unless the same shall be exclusively used for such purposes, and exclusively the property of a religious society." The Young Men's Christian Association of New York sought to have its property on the Bowery, known as the Bowery Institute, exempted from taxation under this act, and the court held that while it might not be impossible to characterize the association as a religious society, it was not entitled to exemption because it did not appear that the building was " exclusively used for purposes of public worship, or exclusively used for those of a seminary of learning." Commenting upon this case (*Young Men's Christian Assn. of N. Y.* v. *Mayor*, 113 N. Y. 187), the court say : " Unless, therefore, it can be truthfully and correctly said that its building is exclusively used for purposes of public worship, it can have no exemption from taxation upon its Bowery Institute. There is no ambiguity in the phrase ' public worship.' It refers to the usual church services upon the Sabbath, open freely to the public, and in which any one may join. (*Assn. for Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581.) There are such services held in the building of the association, but in comparison with the other uses to which that building is put they are the least of all, not, perhaps, in their importance, but in the time which they occupy and the proportion of the building

which they require. At all events, it cannot be properly said, upon the facts disclosed, that the building is used exclusively for purposes of public worship. Associations of this character are so useful and so deserving of encouragement and support that a different result would please us better, but we are unable to reach it under the law as it stands." This opinion of the court was rendered in 1889, and in 1893 we find the statute broadened in its scope to exempt corporations and associations " organized exclusively for the moral and mental improvement of men and women," which is the work undertaken by the Young Men's Christian Association. Clearly, then, the allegation of the society that it has an organization for " mental improvement" does not bring it within the contemplation of the statute.

But the society is likewise maintaining an organization " for certain educational and charitable purposes." Under this head we are told that it maintains an auditorium, etc., but it nowhere appears, either, that these are educational or charitable within the meaning of the statute, or that the society is organized exclusively for the purpose of carrying out one or more of these objects. As was said in *Coe* v. *Washington Mills* (149 Mass. 543): " It was a voluntary association for the mutual benefit of its members, and cannot be held to be a public charitable institution. To constitute a public charity, there must be an absolute gift to a charitable use for the benefit of the public." No such condition prevails in the relator society. It was organized under the provisions of a law which distinctly declares the object for which it was created. It was " an act to incorporate medical societies, for the purpose of regulating the practice of physic." That was the object for which it was created, and under the provisions of the act these medical societies were authorized to accumulate medical libraries, and to become auxiliaries to the Medical Society of the State of New York, which organization, in common with the county branches, has established rules and regulations, many of them being enacted into the statute law of the State, for the practice of physic and surgery. These rules and regulations, and laws which have been enacted upon the suggestion of the Medical Society of the State of New York, have had for their object, at least incidentally, the welfare of the membership of these societies and their individual members as practicing physicians. For many years,

88   PEOPLE ex rel. MEDICAL SOCIETY v. NEFF.

SECOND DEPARTMENT, NOVEMBER TERM, 1898.        [Vol. 34

and until comparatively recent times, membership in these county societies was made compulsory, the license of the individual to practice his profession depending upon such membership. (2 R. S. [7th ed.] 1092, pt. 1, chap. 14, tit. VII, § 1.) The fact that the medical library of the relator may be open to the public, or that it may furnish rooms for the meeting of medical or charitable societies, has no possible bearing upon the case. "Assuming for the sake of argument," say the court in the case of *Donnelly* v. *Boston Catholic Cemetery* (146 Mass. 163), "that it would have no right to declare dividends to its members in case of realizing profits, there is nothing in the charter which compels the application of any part of its funds to charitable uses. * * * The fact that the funds received were actually applied to a considerable extent in charity, is no more material than evidence of a similar application of a part of his income by a private citizen would be in a suit against him." This was an action for damages against a cemetery association, in which the defendant sought to be exempted from damages on the ground that it was a charitable organization. The court made the test, not whether the funds were actually used for charitable purposes, but whether the charter of the defendant compelled it to make such use of its funds; and this is clearly the rule which should be applied to the application of the relator for exemption from taxation on the grounds either of charity or education. There is nothing in the statute under which the relator is organized which compels it to keep its medical library or its reading room open to the public. In fact, it may be fairly questioned whether the public, outside of the comparatively small number of physicians and surgeons, with their students, have any interest in such a library or reading room, while the fact that those rooms are open to the meetings of other medical societies, made up, for the most part, no doubt, of the members of the relator, serves no purpose of society in general which entitles it to immunity from taxation.

In other words, the Medical Society of the County of Kings is performing no service of a character calculated to relieve the burdens of government more than a thousand other mutual associations or corporations, designed for the promotion of the individual development of its members. It is, therefore, entitled to none of the exemp-

tions which are extended to corporations or associations which are devoted exclusively to the "moral and mental improvement of men and women," or to "religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes." It is, in effect, a medical club house, where the members of a single profession meet for "mental improvement" and such incidental benefits as flow from association and co-operation of effort. One of the results of these medical societies has been to establish a practically uniform rate of charges, or at least to establish a minimum rate, and to afford a degree of protection to individual practitioners which would be practically impossible without an organization empowered to enforce obedience to by-laws and respect for professional ethics. It is not necessary to ascribe selfish motives, and it is undoubtedly true that the relator is performing many charitable and commendable acts, in common with mankind in every walk of life; but this is not, of itself, a justification for the State's relieving it of the burdens which are common to good citizenship generally; and, accepting the relator's own statement of the case, there are no facts to bring it within the provisions of the law. The relator was not organized "exclusively" for the purpose of carrying out any of the lines of work enumerated in the statute, or any two or more of such objects. It makes no such claim in its moving papers, and it was error, therefore, for the court to grant the order appealed from.

The order should be reversed, with costs.

All concurred.

Order reversed, with ten dollars costs and disbursements, and application denied, with ten dollars costs.