SCOTTISH RITE TEMPLE ASSOCIATION, Appellant, v.
BOARD OF COMMISSIONERS OF YANKTON
COUNTY, et al, Respondents.

(252 N. W. 626.)

(File No. 7389. Opinion filed February 1, 1934.)

*Clark & Cope,* of Yankton, for Appellant.

*Frank Biegelmeier,* State's Attorney, of Yankton, for Respondents.

RUDOLPH, J. This case is before the court upon stipulated facts. The material stipulated facts are, as follows: The plaintiff, Scottish Rite Temple Association, is a corporation organized for the purpose of holding in trust the legal title to the property owned by Oriental Consistory No. 1 of the Ancient and Accepted Scottish Rite of the Southern jurisdiction of the United States of America, a branch of the order of the Ancient Free and Accepted Masons; said Oriental Consistory No 1 is a benevolent and charitable institution within the meaning of the provisions of chapter 243 of the Session Laws of 1929. Oriental Consistory No. 1 owns certain

real property which is adjacent to other grounds owned by said Consistory, upon which is erected a Masonic Temple. Upon these grounds there is a brick dwelling house erected for and used exclusively as a place of residence for the secretary of Oriental Consistory No. 1 and his family, and this house is furnished as a residence for the secretary as a part of his salary. The secretary of Oriental Consistory No. 1 is the custodian of the books and records of the order, and as such secretary he is in charge of all correspondence, and it is his duty to aid and assist the members in times of distress and need, to advise the officers and members of benevolent and charitable needs and of those entitled to its bounty, to see that the objects and purposes of the organization are carried out, and to spread the doctrines and benevolent principles of the order of Free Masons. This property upon which the secretary's house is located was assessed for taxation and placed upon the tax list of Yankton county and a tax was levied against the property for the year of 1930. Thereafter there was filed with the county auditor of Yankton county and presented, as required by law, an application for an abatement of the taxes upon these premises. This application was denied, and an appeal was perfected to the circuit court of Yankton county, which court also denied the application, and entered its judgment accordingly. This is an appeal from the judgment of the circuit court.

Section 6, article 11, of our State Constitution, provides that "the legislature shall, by general law, exempt from taxation, property used exclusively * * * for school, religious, cemetery and charitable purposes, * * *" Pursuant to the above constitutional provision, there has been enacted chapter 243, Laws of 1929, which provides in part, "all property belonging to any charitable, benevolent or religious society and used exclusively for charitable, benevolent or religious purposes" shall be exempt from taxation. The question, which is presented, is whether the property owned by Oriental Consistory No. 1, which it is stipulated is a benevolent and charitable institution within the meaning of our law, and which is occupied by the secretary of Oriental Consistory No. 1, is exempt from taxation on the grounds that it is used exclusively for benevolent and charitable purposes. In this connection it might be well to call attention to one other provision of the said chapter 243, Laws of 1929, which provides that any property owned by a

charitable, benevolent, or religious organization which "shall consist of hotel or residence property, or any other class of mercantile building or establishment, within or without the corporate limits of any town of city, and such property shall be used or owned primarily for the purposes of revenue, and not for the primary object of such charitable, benevolent or religious society, it shall be taxed as other property, of the same class, is taxed."

This court in the case of State ex rel Eveland v. Erickson, 44 S. D. 63, 182 N. W. 315, 316, 13 A. L. R. 1189, had occasion to pass upon the question of whether a parsonage owned by a religious society and used as a place of residence by the pastor of the church was used exclusively for a religious purpose within the meaning of the above constitutional provision. At the time the Eveland Case was decided, the law in effect provided for an exemption of "all property belonging to any charitable, benevolent or religious society or used exclusively for charitable, benevolent or religious purposes." However, the court in the Eveland Case ignored that part of the law purporting to exempt property merely because it belonged to a religious society and decided the case entirely upon the question of whether the property there involved was used exclusively for religious purposes. The court in that case laid down a rule that, in determining whether the use to which certain property is put is for any certain purpose, it must be determined what is first or fundamentally in the intention of the owners of the property when putting the same to use. Applying this rule in the Eveland Case, the court held that the use of a parsonage for the residence of a minister and his family was for a religious purpose within the meaning of our Constitution. Applying this same rule to the facts in this case, we can come to no other conclusion than that the use of the property here involved is for a charitable and benevolent purpose within the meaning of our Constitution. In other words, under the Eveland Case it is not the mere use of the property that controls, but the "purpose of the use." Thus, "the purpose of the use" of this property, so far as the owner is concerned, is not to shelter its secretary, but to promote the primary objects of the organization, which are stipulated to be benevolent and charitable. As is said in the note in 13 A. L. R. at page 1203, in commenting upon the Eveland Case, "it is not the fact that the particular building being considered is

occupied as a residence, but rather the underlying or primary purpose of such occupation, which determines the question of exemption." From a reading of the Eveland Case one can come to no other conclusion than that it was well considered by the court and the opinion carefully prepared. The result reached was with a full understanding that in most jurisdictions parsonages are not considered as being used for religious purposes within the meaning of tax exemption provisions. The opinion in the case of Dakota Wesleyan University v. Betts, 47 S. D. 618, 201 N. W. 524, expressed approval of the Eveland Case. We are not inclined at this time to depart from the rule announced in the Eveland Case, and applying that rule to the facts here presented, we are of the opinion that this property must be held to be exempt from taxation. The residence property, under the stipulated facts in this case, bears the same relation to the stipulated benevolent and charitable organization, that a parsonage does to a religious organization.

The judgment and order appealed from are reversed.

ROBERTS, P. J., and WARREN, J., concur.

POLLEY, J., dissents.

CAMPBELL, J. (concurring specially).

I agree with the foregoing opinion in thinking that no valid distinction in principle can be drawn between the situation here presented and the situation presented in the case of State ex rel Eveland v. Erickson, 44 S. D. 63, 182 N. W. 315, 13 A. L. R. 1189. I am not convinced of the soundness of the doctrine promulgated by the Eveland Case, but, if the doctrine of that case is to continue as the rule of law of this state, I think it should be applied here. The statute providing for the exemption of property "used exclusively for charitable, benevolent or religious purposes," there ought not, in all fairness and justice, to be one test of exclusive use for a religious or benevolent society and a different test of exclusive use for a charitable society. I concur, therefore, in the reversal of the judgment appealed from.