In Re SOUTH DAKOTA SIGMA CHAPTER HOUSE ASS'N
FOR REFUND OF TAXES.

SOUTH DAKOTA SIGMA CHAPTER HOUSE ASS'N,
Appellant, v. CLAY COUNTY, Respondent.

(276 N. W. 258)

(File No. 8032.   Opinion filed December 2, 1937)

*Bailey, Voorhees, Woods & Bottum* and *H. L. Fuller,* all of Sioux Falls, for Appellant.

*Irwin R. Erickson* and *Raymond L. Collar,* both of Vermillion, and *R. F. Drewry,* of Pierre, for Respondent.

SMITH, J. Appellant made claim in the aggregate amount of $3,502.81, under section 6813, Revised Code of 1919, before the county commissioners of Clay County as for refund of taxes paid on its real property during the years from 1925 to 1935, inclusive. It was asserted in the claim that its property was exempt from taxation under section 6670, Revised Code of 1919, and the enactments amendatory thereto dealing with the property used for benevolent or charitable purposes. Its claim was rejected by the county commissioners, was again rejected by the circuit court on appeal, and is now here on appeal from the judgment and order denying a motion for a new trial.

Sigma Alpha Epsilon is a Greek letter society or fraternity, having a local chapter at the University of South Dakota known as the South Dakota Sigma Chapter to which we hereinafter make reference as the chapter. In 1911, members of S. A. E. as incorporators filed articles of incorporation with the secretary of state of South Dakota and procured a charter under the provisions of sections 8854 to 8861, Revised Code of 1919, dealing with fraternal, benevolent, and charitable associations. That corporation is appellant here. In its articles of incorporation its purposes were stated as follows: "The purpose for which this corporation is formed is: "To acquire residence lots in the city of Vermillion, S. Dak., and to erect, furnish, and operate thereon a Chapter House, to be used as the residence and home of members of the South Dakota Sigma Chapter of Sigma Alpha Epsilon Fraternity while in attendance at the University of South Dakota, at Vermillion, S. Dak."

These articles further provided: "The title to all property, both real and personal, shall be in the name of the Association as hereinbefore set forth and money in the hands of the Secretary-Treasurer shall be deposited in the name of the Association in such Bank as the Board may select. * * * In the event the purposes for which this corporation was formed cannot be carried out by reason of operation of law, or otherwise, the Board of Trustees shall convert the corporation property into money and divide the same among those holding Certificates, and each member's share shall be subject to off-set on account of any claims not yet due, which the Association may have against him, but no member shall share in such distribution against whom the corporation has any past due claims."

By the terms of its by-laws, its membership was to be recruited solely from members of P. H. P. society of the University of South Dakota (the purposes and background of which is not explained by the record), and from members of S. A. E.; each membership being conditioned upon a contribution of $100 to its capital. Thereafter, it acquired real property and erected thereon a building designed for the convenience of the chapter. The taxes paid on this property are the subject of the controversy. After the erection of the building, the annual taxes

ranged from $162.28 to $254.16. During the entire period the building has been occupied by the chapter. The record discloses the activities and purposes of the chapter in some detail, as well as the fact that appellant assessed the chapter annually for the use of the property. We refer to this assessment by appellant as a charge. This charge was fixed according to the needs of appellant and the ability of the chapter to pay, and these payments, together with membership fees and donations, were used to pay the operating expenses of appellant and to accumulate funds with which to discharge the mortgage indebtedness on its property. The operating expenses of appellant do not include salaries to any of its officers. During the period in question, the charge imposed by appellant on the chapter ranged from $750 to $2,500 per annum. The record does not disclose the charge exacted by appellant for any particular year. Counsel for appellant state that when the mortgage indebtedness is paid the funds of appellant will be used to create a sinking fund to improve or replace the present building.

Changes were made in the applicable statutes during the period involved. Section 6670, Revised Code of 1919, originally described property exempt from taxation as follows: "All property belonging to any charitable, benevolent or religious society, or used exclusively for charitable, benevolent or religious purposes." This language was amended by chapter 243 of the Session Laws of 1929 so as to substitute the conjunction "and" for the conjunction "or." By the same amendatory act the terms "charitable society" and "benevolent society," as used in the exemption statute, were defined. It was there provided: "The term charitable society as used herein shall include all persons, firms, associations, or corporations, owning and/or operating any hospital, sanitarium, orphanage, asylum, home, resort, or camp exclusively, or owns or occupies a building, as a part of the charitable or educational program of any church, lodge, school, or similar institution; also any public sanitarium, hospital, or asylum open generally to the public without regard to the ability of the patient to pay, and admitting all persons for treatment until the said institution is filled to its ordinary capacity, and which institution conforms to regulations of and permits inspections by the state board of health of the State of South Dakota. The term benevolent society as used herein shall include

all lodges, patriotic organizations, memorial associations, educational associations, cemetery associations, and similar institutions, operating without profit and devoting their resources to the promotion of virtue by charitable, educational, ritualistic, ceremonial, literary, or other similar methods, or by any or all of such methods."

It thus appears that prior to July 1, 1929, separation of use and ownership was permitted by statute, and the terms "charitable society" and "benevolent society" were undefined. Subsequent to July 1, 1929, it was required that use and ownership concur and that the enumerated societies conform to the definitions contained in the 1929 amendment. Thus we are confronted by two separate fields of inquiry, namely: (1) Was the property used or owned by a charitable or benevolent society, in the ordinary acceptation of those terms, during the period involved prior to July 1, 1929; and (2) was the property used and owned by a charitable or benevolent association, as those terms are defined by chapter 243 of the Session Laws of 1929, during the period involved subsequent to July 1, 1929. These two fields of inquiry include common factors, and our ultimate conclusions rest upon the views we entertain with reference to those common factors.

Whether the chapter may be classified as a charitable or benevolent society is argued at length by both appellant and respondent. Classification of the Greek letter society for similar purposes has proved difficult and troublesome to the courts. The principal cases are collected in the footnotes of 61 C. J. at page 493, paragraph 579. For reasons presently to be stated, we do not find it necessary to deal with the subject. For the purposes of our analysis we have assumed that the chapter was, during the entire period involved, a benevolent or charitable society within the common acceptation of those terms as well as under the statutory definitions of those terms to which we have adverted, supra.

■ Much of the weight of the advocacy of counsel for claimant rests upon the assumption that appellant should be clothed with all of the purposes, and credited with all of the activities, of the chapter. That this premise is fallacious appears from a cursory examination of the record. In primary support of this assumption counsel state that: "Appellant was organized as a matter of expediency to hold title to the property involved." The record

discloses, however, that the chapter and appellant are separate entities, that appellant is the absolute owner of the property upon which the taxes were paid, and that the chapter has no equitable or legal interest therein. The chapter is a tenant at will of the appellant. The only tie that binds these two separate legal entities grows out of the fact that a majority of the members of appellant are also past or active members of the chapter. It seems more nearly accurate to say that appellant was organized and exists for the purpose of owning and operating a building designed, appointed, and located so as to meet the special requirements of the chapter. The light of these indisputable facts renders it clear that appellant can claim no credit for the purposes and activities of the chapter, and that its claim to status as a charitable or benevolent corporation must be determined solely upon the basis of its corporate purposes and activities.

■ Do the purposes and activities of appellant characterize it as either a charitable or a benevolent society? Manifestly there is no suggestion of charitable or benevolent characteristics contained in the bare statement of purposes of appellant as set forth in its articles. It is equally clear that the activities carried on by appellant during the very period at issue have been neither charitable nor benevolent. The value of its property is not definitely evidenced by the record, but that value may be estimated approximately from the amount of the annual tax thereon. With the value of the property in mind, it is readily apparent that the annual charges levied by appellant upon the chapter of from $750 to $2,500 per annum have been at least equivalent to the charge a stranger would have exacted as rent for the property during the same period. The facts command the conclusion that appellant has done no more than to provide the chapter with the character of building best suited to its needs, and that for so doing it has withdrawn from the assumed benevolence, namely, the chapter, a full equivalent in money. This is neither charity nor benevolence when measured by any standard.

Admittedly, appellant's central interest is in the well-being of the chapter. Surely it is self-evident, however, that appellant cannot claim a present classification as a charitable or benevolent society or association based upon mere solicitude for the well-being

of the chapter and a promise of benefits to be conferred in the future.

It therefore conclusively appears that when the characteristics of appellant are tested by its purposes and its activities, it is neither a benevolent nor a charitable society.

■■■■ Appellant asserts, however, that at least during the period prior to the amendment of 1929 (wherein the terms "charitable society" and "benevolent society" were defined), the fact that appellant was incorporated under section 8854, Revised Code of 1919, is determinative of its character for the purpose of exemption. This contention is predicated upon the language used by this court in the case of Dakota Lodge No. 1, I. O. O. F. v. Yankton County, 56 S. D. 234, 228 N. W. 238, 239. In that case it was said: "The meaning thus attached by the Legislature, through a long period of years, to the word 'benevolent,' as used in designating the character of societies for the purpose of incorporation, cannot be ignored in endeavoring to ascertain the meaning attached to the use of the same word in designating the societies whose property shall be exempt from taxation, and we think that, in providing for the exemption of all property belonging to any charitable, benevolent, or religious society, the Legislature must have contemplated the inclusion of such societies as were deemed benevolent societies for the purpose of incorporation as such, and the appellant is a benevolent society whose property was exempt from taxation under the provisions of Rev. Code 1919, § 6670."

Examination of that case discloses that decision therein turned upon other considerations. If the foregoing discussion be accepted as sound, it must be kept in mind that the organization there involved, I. O. O. F., was specifically designated as a benevolent or charitable institution by the terms of section 8854, supra, and the record in the case demonstrated that its practices conformed to its purposes. The statute does not name appellant, and when its wording is examined and the purposes of appellant are considered in the light of that wording, there is room for grave doubt as to whether appellant should have received a charter from the state under the provisions of that section. However, be that as it may, an organization properly chartered under that provision in our opinion may be denied exemption if its practices are not in con-

formity with its tenets. The issue is not foreclosed for all time by the grant of a charter. If it were not so, under the exemption statute prior to 1929, a corporation so chartered, which thereafter digressed from its corporate purposes, could have claimed exemption on property used in commerce. Therefore, in the instant case, because the activities of appellant during the period under consideration were not in fact charitable or benevolent, sound reasoning requires that it be not permitted to gain any advantage by reason of its classification for the purposes of incorporation.

We need not decide whether mere ownership offers a reasonable basis for classification of property for the purposes of taxation, because we conclude that the property in question was never owned by a charitable or benevolent society.

██ This brings us to a determination of the effect of the use of the property by an assumed benevolence, the chapter, prior to July 1, 1929, during which period the right to exemption could arise from the exclusive use of the property for charitable or benevolent purposes. Section 6670, Revised Code of 1919, supra. Analysis has convinced us that when this problem is approached from the aspect of "use of the property," ownership of the property continues as a factor to be considered. An exemption of this type is granted as a concession by government in return for unselfish ministrations to human welfare. That this concession is intended by the Legislature as a quid pro quo is asserted by authority. Carteret Academy v. State Board of Taxes and Assessment, 102 N. J. L. 525, 133 A. 886, 887; 61 C. J. 382. If the advantage of the concession so made be permitted to accrue to ownership rather than to the benevolence the law seeks to foster or promote, obviously the purpose of the law will be defeated. Therefore, the landlord may not claim exemption of property leased to an institution of one of the enumerated classes for a rent equivalent. As to such an ownership, the property is used exclusively for rental purposes, and not for charitable or benevolent or educational, etc., purposes. State ex rel. Hammer, Collector v. Macgurn et al., 187 Mo. 238, 86 S. W. 138, 2 Ann. Cas. 808; Montgomery et al. v. Wyman et al., 130 Ill. 17, 22 N. E. 845; County of Hennepin v. Bell et al., 43 Minn. 344, 45 N. W. 615; Travelers' Insurance Company v. Kent et al., 151 Ind. 349, 50 N. E. 562, 51 N. E.

723; Armand v. Dumas, 28 La. Ann. 403; St. Mary's College v. Crowl, 10 Kan. 442; Broadway Christian Church v. Commonwealth et al., 112 Ky. 448, 66 S. W. 32.

■■ Appellant stands in no better position than the ordinary landlord. In both instances the money equivalent exacted from the charity or benevolence intercepts the flow of the concession offered by the state, and operates to withhold it from that charity and benevolence. Further, we entertain the view that the statute intends a direct annual flow of the benefit of the concession to the benevolence, uncontrolled by the discretion of any outside agency. Therefore, a promise of accumulation of the money equivalent of the concession for the future use or benefit of the charity or benevolence, according to some uncontrolled discretion of an owner, will not serve to characterize the present use by that owner as charitable or benevolent. The use of the property by appellant is characterized by its exaction from the chapter, and as to it, the property is not used exclusively for charitable or benevolent purposes.

To recapitulate, we conclude: (1) That appellant may not be characterized by the purposes and practices of the chapter, notwithstanding its intimate relation to and its solicitude for the chapter; (2) that appellant is not a charitable or benevolent society; (3) that as to appellant the property was not exclusively used for benevolent or charitable purposes; and (4) that, therefore, neither the use nor ownership of the property during the period in question rendered it exempt from taxation.

It follows that the judgment and order of the trial court must be, and they are, affirmed.

All the Judges concur.