SIOUX FALLS POST NO. 15, AMERICAN LEGION, Respondent, v. WILLIAMSON et al., Appellants.

(41 N. W.2d 647)

(File No. 9089. Opinion filed February 27, 1950)

**Sigurd Anderson,** Atty. Gen., **Alan Williamson,** Asst. Atty. Gen., Attorneys for Appellants.

**Roy D. Burns** and **Gene E. Pruitt,** Sioux Falls, Attorneys for Respondent.

RUDOLPH, J.   Sioux Falls Post No .15, The American Legion, brought this action to have determined its liability for contributions under SDC 17.08, the Unemployment Compensation Law.   The trial court declared that the Post was not required to pay under the law, and the Unemployment Compensation Commissioner has appealed.

It is agreed that the Post has more than eight regular full-time employees on its payroll.   The question presented is whether these employees come within the exemption contained in SDC 17.0802(7) (g) (3), as amended by Ch. 82, Laws of 1941, which provides that the term "employment" shall not include, "Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the pre-

vention of cruelty to children or animals or for benevolent cr civic purposes no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; * * *"

Stipulated facts are as follows:

The plaintiff is a Post of the National American Legion whose members consist of Veterans of World Wars 1 and 2. It is organized for the following purposes as stated in the preamble of its Constitution:

"For God and Country, we associate ourselves together for the following purposes:

"To uphold and defend the Constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred per cent Americanism; to preserve the memories and incidents of our associations in the Great Wars; to inculcate a sense of individual obligation to the community, state and nation; to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy; to consecrate and sanctify our comradeship by our devotion to mutual helpfulness."

Plaintiff is incorporated as a benevolent corporation under the express provisions of SDC 11.1401 which authorizes posts of the American Legion to incorporate as such.

There were 3811 members of the Post in 1948. No part of the net earnings of the plaintiff inures to the benefit of any private shareholder, member or individual, and no substantial part of the activities of said Post is the carrying on of propaganda or otherwise attempting to influence legislation.

Sioux Falls Post No. 15 owns, maintains and operates a a two-story building with basement and adjoining rented basement space at 309 West 9th Street in the City of Sioux Falls, Minnehaha County, South Dakota. On the first or ground floor of the building is maintained the offices of the Post Adjutant and other officers and clerical help of the

Post, a reading room, a lounging lobby and a snack bar at which coffee, doughnuts and pie are served to the members at a loss. On the second story floor is the meeting hall and meeting rooms of the Post. In the basement is maintained and operated a dining room and kitchen and a bar operated under a Class J license issued to the Post by the State of South Dakota under the provisions of SDC 5.02. The door to the basement is kept locked and access thereto is gained by the members in good standing who have been issued keys.

For the period from May 20 to November 27, 1948, the gross receipts from the dining room operated in the basement in round figures were $11,662.00 and the disbursements were $10,645.00, leaving a net income on operation of the dining room of $1,017.00. For the same period, the gross receipts of the operations under the Class J Club license were $20,402.00 and the expenses were $15,865.00, leaving a net income of $4,537.00. The Post has received from membership dues for 1948 $8,788.00, of which $5,775.00 was paid out to the State Department and the National organizations, leaving a net income from dues of $3,013.00.

From the operation of the snack bar on the first floor there was received $1228.00 but the expenses amounted to $2111.00, which operation resulted in a loss of $833.00. There are other miscellaneous activities carried on by the Post which produce revenues less or slightly more than the expenses incurred in carrying them on.

Other activities by the Post in connection with maintaining and operating its club headquarters and carrying out its purposes, involved expenditures during the fiscal year beginning June 1 to November 30, 1948 as follows: For janitor service and maintenance of the first and second floors, $2337.00; light, water and gas for the building, $1343.-00; sick and relief, $245.00; meeting expense, $328.00; salaries of finance officer, assistant adjutant, secretary and extra clerical help, $2112.00; miscellaneous project expenses, $145.00; advertising, $58.00; donations to American Red Cross, Community Chest, Tuberculosis Christmas Seals Fund, Boy Scouts, Y. M. C. A., $1223.00; postage $579.00; ammunition for burial squad, $52.00; convention expenses,

$370.00; Social Security tax, $52.00; Junior Baseball expense in excess of income, $1442.00; uniforms, $90.00; insurance, $739.00; appropriated for Christmas Party for gifts for underprivileged children for 1948, $1000.00, to be expended in December; expense of boys to Boys State and Child Welfare, $325.00; expense of membership drive, $500.00; American Legion Bowling Team, $833.00; rent for additional basement space, $350.00; remodeling club, $726.00; American Legion Post paper for members, $509.00; American Legion Chorus, $1216.00; Commander's expense, $109.00; National Convention fund to cover expenses of delegates and officers to convention, $2678.00; remodeling basement, $2721.00; Golden Glove Boxing, $122.00; Printing, $622.00; telephone and telegraph, $244.00; building repairs and maintenance, $2321.00; flowers for funerals and sick members, $194.00; expense of Legion Chorus entertainment in excess of income, $560.00.

The specific authority for a post of the American Legion to organize as a Benevolent Corporation came into our law with the revision of the Code in 1939. It must be presumed that the legislature was advised of the purposes for which posts of the American Legion are organized and by this specific provision acknowledged these purposes as being benevolent. We start then with the premise that the purposes for which plaintiff was organized are benevolent. However, the exemption contained in SDC 17.0802(7) (g) (5), as amended by Ch. 82, Laws of 1941, relates to service performed in the employ of a corporation not only organized for benevolent purposes but in addition it must be exclusively operated for such purposes. The question presented, therefore, is whether the plaintiff is operated exclusively for the purposes stated in the preamble of the Constitution of the American Legion, which purposes our legislature has declared to be benevolent, and other purposes benevolent in character. This question must be determined from the facts.

█ The exemption clause upon which plaintiff relies wherein it provides that "no part of the net earnings" etc., recognizes that a corporation operated exclusively for benevolent purposes may have income without limitation as to

the source thereof. It is the destination of the income not the source that determines the exemption. Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; American Medical Ass'n v. Board of Review, 392 Ill. 614, 65 N.E.2d 350; Bohemian Gymnastic Ass'n v. Higgins, 2 Cir., 147 F.2d 774; Jones v. Better Business Bureau of Oklahoma City, 10 Cir., 123 F.2d 767; Oklahoma State Fair and Exposition v. Jones, D.C., 44 F.Supp. 630; City Club of Milwaukee v. United States, D.C., 46 F.Supp. 673. In seeking to determine whether plaintiff is exempt from contributions under the act we are not concerned, therefore, with the source of its income but only its ultimate use.

■ We think it clear from the stipulated facts that the purposes for which plaintiff uses its income, with one exception, are clearly to promote the purposes for which it was organized and other benevolent purposes. The one exception to which we refer is the maintenance of its building and club headquarters. From the stipulated facts it appears that the first or ground floor of the building is occupied by offices, a reading room, a lounging lobby and a snack bar. The bar and restaurant are in the basement. It therefore appears that the post maintains club facilities for its members and that in part it uses its income to maintain such facilities. Can it be said that the maintenance of club facilities for the members is for a benevolent purpose, or is it a purpose simply benefical to the members? The club is maintained from the earnings of the bar, restaurant and other activities. It is easily conceivable that club features could be maintained in this type of organization with an object to promote the purposes for which it is created, rather than to serve the social enjoyment or benefit of the members. The stipulated facts do not disclose that the club feature is a significant part of the organization nor does it appear to what extent the club operates for social purposes. All that appears is that club features are maintained. It would seem that the purpose of maintaining the bar and restaurant is financial. The trial court specifically found that the plaintiff is operated exclusively for benevolent purposes; under this record we cannot hold that this finding

is against the clear preponderance of the evidence. It appears to us that the facts here presented are in their controlling aspects similar to those presented to the court in the case of Bohemian Gymnastic Ass'n v. Higgins, supra [147 F.2d 777], wherein the court said, "We think an exemption under the present circumstances has never been denied." The case of American Medical Ass'n v. Board of Review, supra, upon which appellant relies fails to support his position for it appears in that case a substantial portion of the income of the association claiming the exemption went "toward protecting and furthering economic benefits to the individual members of the association." [392 Ill. 614, 65 N. E.2d 354.]

The judgment appealed from is affirmed.

All the Judges concur.