SOUTH DAKOTA STATE MEDICAL ASSOCIATION, Respondent
v.
JONES et al., Appellants

(146 N.W.2d 725)

(File No. 10257. Opinion filed November 25, 1966)
Rehearing denied April 26, 1967

**Roger A. Schiager, John P. McQuillen,** Sioux Falls, for defendants and appellants.

**Zimmer & Connelly,** Parker, for plaintiff and respondent.

ROBERTS, Judge.

The South Dakota State Medical Association, hereafter called the association, claiming to be a benevolent organization made application to the board of commissioners of Minnehaha County for the abatement of taxes for the year 1960 and subsequent years on real property described as Lots 11 and 12 of Block 52, Airport Addition to the City of Sioux Falls, upon which there is an office building. The association appealed to the circuit court from the decision of the board denying its application. After hearing evidence the court found that a proportionate part of the real property, consisting of the lots and building, was exempt from taxation. The judgment decreed that the taxes for the years in question be abated except the amounts found payable on proportionate value of the part of the property subject to taxation. From the judgment, defendants have appealed.

The question presented is whether respondent association comes within the exempting provisions of SDC 57.0311: "All property described in this section to the extent herein limited shall be exempt from taxation: * * * (3) All property belonging to any charitable, benevolent, or religious society and used exclusively for charitable, benevolent, or religious purposes. * * * The term benevolent society as used herein shall include all lodges, patriotic organizations, memorial associations, educational associations, cemetery associations, and similar institutions, operating without profit and devoting their resources to the promotion of virtue by charitable, educational, ritualistic, ceremonial, literary or other similar methods, or by any or all of such methods. * * * (b) If the property above referred to, other than farm lands, shall be occupied partly by a charitable, benevolent, or religious society, and the remaining part is occupied, rented, or used for purposes other than the object for which such society or institution was primarily organized, such portion of property as is so occupied, rented, or used for other than the purposes for which the society or institution owning the same or having the exclusive use of the same was organized, shall be taxed as other property of the same class is taxed, in the proportion as the value of such part shall bear to the entire property".

The articles of incorporation of the association state that its objects and purposes are "to advance the medical and collateral sciences and to assist in acquiring a knowledge of the same; to work for the benefit of community health and welfare; to bring together the physicians of this state into one organization and unite with similar organizations to form the American Medical Association; to elevate the standards of medical education; to assist in establishing high standards of medical care in all public programs and to advise persons or agencies in the administration of such programs; and to lease, hold, purchase, buy or sell such property, real, personal, or mixed, as may be necessary or reasonably incidental to the conduct of its business, its purposes and objects; and to acquire such property or any part of it by gift, devise, or purchase." The articles also provide: "In the event this Corporation shall be dissolved, voluntarily or involuntarily, all of the corporate assets of this Corpora-

tion, wherever situated and of whatsoever character, remaining after the payment of all of its obligations, in the manner provided by law, shall be paid or conveyed to the School of Medicine of the University of South Dakota and in the event such School of Medicine is unable or unwilling to accept, said assets shall be distributed to the State of South Dakota to be used for the betterment of public health."

 Respondent association is a nonprofit corporation having no stockholders. Members of the association are doctors of medicine licensed in this state. It appears to be conceded that the association was incorporated under the provisions of SDC 11.14 providing for the organization of benevolent corporations. In Dakota Lodge No. 1, I. O. O. F. v. Yankton County, 56 S.D. 234, 228 N.W. 238, cited by respondent, it was held that the meaning of "benevolent" as used in the statute relative to incorporation of benevolent societies had controlling effect as to its meaning in a statute providing for exemption of benevolent societies from taxation. It is to be observed that the plaintiff lodge in that case was specifically included with other named societies in the incorporating statute. The statute there considered exempted from taxation all property "belonging to any * * * benevolent * * * society, or used exclusively for * * * benevolent * * * purposes." Subd. 3 of Sec. 6670, R. Code 1919, as amended by Ch. 106, Laws 1919. The right to exemption was alternatively stated. Use became immaterial if property belonged to a benevolent society. The 1929 legislature amended this statute by Ch. 243, Laws 1929, which became a part of Section 57.0311, supra. Under its language a property owning organization is not entitled to exemption solely on the basis of ownership. The property itself must also be "used exclusively for charitable, benevolent, or religious purposes."

In South Dakota Sigma Chapter House Ass'n. v. Clay County, 65 S.D. 559, 276 N.W. 258, this court had before it the question whether or not plaintiff association incorporated for the purpose of acquiring lots and erecting and furnishing a house thereon for use as a residence by members of a university fraternity was entitled to exemption of the property from taxation and held that it was not. It was the conclusion of this court

that an organization properly incorporated as a charitable or benevolent society must be denied tax exemption if from its activities it appears that the property is not devoted to charitable or benevolent purposes. The fact then that respondent association was not organized for profit and that in the event of dissolution the corporate assets will not inure to any prohibited person is not of controlling importance.

The respondent argues, and the trial court held, that the activities of the association result in more or less direct benefits to the public, such as providing medical scholarships, assistance to medical students, distribution of public health literature, assistance to the South Dakota Board of Medical Examiners, a physician placement service, maintenance of a medical grievance committee, and assistance in the establishment and operation of clinics free to the public.

The South Dakota Medical Service, Inc., South Dakota Nurses Association, the State Board of Medical and Osteopathic Examiners and the National Polio Foundation rent and occupy offices in the building of the respondent. The South Dakota Medical Service, Inc. is a corporation organized under the Medical and Surgical Plan law SDC 1960 Supp. 31.17B. A corporation organized under this act is therein declared to be subject to taxation. It enters into contracts with subscribers to furnish prepaid medical and surgical services in the nature of insurance. This so-called Blue Shield pays claims to members of the association for medical services rendered to subscribers. The court found that the other tenants are either benevolent organizations or agencies of government and that their operations are compatible with the purposes and objectives of the respondent association. It was held that the proportionate value of the part of the building leased to the South Dakota Medical Service, Inc. is subject to taxation. The remaining part of the building, including space occupied by the association, was found to be exempt from taxation.

The association renders a service to its members under agreements negotiated with federal and state agencies in providing medical care for veterans and dependents of persons in military service and recipients of old age assistance.

The annual reports of the transactions of the association and annual audits of its books and records for the years 1947 to 1963 were received in evidence. As of April 30, 1962, a year covered by the taxes in question, receipts totaled $134,520.59 and disbursements $135,370.29.[1] Fiscal programs sponsored by the association are not therein included. These operations are referred to in the annual report of the executive secretary for the same year as follows: "BLUE SHIELD During the past twelve months, we have seen a continued gain in the size and stature of our Blue Shield program. A year ago we had 14,966 subscribers; on April 30, 1962, we had approximately 18,000. Total persons in the state covered by Blue Shield is now in excess of 60,000. Our annual earned income rose from $435,000.00 to $655,-368.68. During the year, we paid medical and surgical claims totaling $530,759.54. OLD AGE ASSISTANCE MEDICAL CARE This program was started August 1st, administered through the Association and Blue Shield office. As in any new programs, there have been numerous 'bugs' to iron out. However, the major problems have been or are being solved. The program brought in $187,222.08 in payments for services rendered during the first nine months. Of this amount, $11,621.46 was retained in the office for administrative purposes. MEDICARE The Medical Care Program for dependents of military personnel held fairly constant during the year. In 1960-1961 the program totaled $54,990.00, this year $53,581.57. Administrative costs were reduced from 6% to 5.6%."

 We have indicated that in order for an organization to qualify for exemption under the provisions of Section 57.0311, supra, there must be a concurrence of ownership of the property by an organization of the type named therein and a use of

---

1. "Expenses:

| | | | |
|---|---|---|---|
| Salary—executive | $11,100.00 | American Medical Association dues | $11,452.50 |
| Salary—editor | 720.00 | Ins. premiums remitted | 37,119.88 |
| Salaries—other | 12,737.63 | Taxes, license, insurance and | |
| Social security tax expense | 535.28 | maintenance | 858.69 |
| Legal and audit | 701.18 | Postage | 1,006.62 |
| Rent | 3,000.00 | Ladies auxiliary expense | 493.71 |
| Telephone & telegraph | 1,284.59 | Donations and gifts | 426.00 |
| Office and operating expenses | 25,141.38 | Depreciation expense | 5,758.03 |
| Dues and subscriptions | 1,404.00 | Interest expense | 2,937.23 |
| Officer's travel | 2,252.30 | Heat, electricity and water | 1,779.71 |
| Executive secretary—travel and | | Commissions paid | 787.37 |
| expense | 5,559.06 | Refunds | 389.35 |
| Annual meeting expense | 6,983.25 | | |
| Public relations | 942.53 | Total expenses | $135,370.29" |

the property for one or more of the prescribed purposes. It is established by prior decisions of this court that the test for determining whether property is "used exclusively for charitable, benevolent, or religious purposes" is not the mere use of the property that determines the right to exemption, but rather the "purpose of the use" which controls. State ex rel. Eveland v. Erickson, 44 S.D. 63, 182 N.W. 315, 13 A.L.R. 1189; Scottish Rite Temple Association v. Board of Commissioners of Yankton County, 62 S.D. 204, 252 N.W. 626. Whether the property in question was devoted to benevolent purposes is a question of fact and the burden of proof is on the association to show that the specific property for which exemption is claimed is within the contemplation of the statute.

■ ■ Massachusetts Medical Soc. v. Assessors of Boston, 340 Mass. 327, 164 N.E.2d 325, involved a claim of tax exemption under circumstances similar to those before us. The plaintiff society sought abatement of taxes on an office building occupied by its officers and a post-graduate medical institute. It was there said: "Whether an institution is in its character literary, benevolent, charitable or scientific will depend upon the declared purposes and the actual work performed. * * * An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work. * * * The declared purposes of the society indicate that it is operated primarily for the betterment of a particular limited group of persons. And confirmation that it is so operated may be found in many of its activities and expenditures. * * * Even the society's broader activities (world wide distribution of the journal, supervision of medical ethics, and educational services) are carried on primarily for the benefit of the medical profession. There are, to be sure, charitable benefits that are given by the society to aid needy medical students and needy doctors and their families. But these benefits constitute but a small percentage of the society's funds and are incidental to its main

objectives. There can be no doubt that the work of the society is most laudable; it is aimed at improving the knowledge and skills of the medical profession. That a more enlightened medical profession benefits the public cannot be gainsaid. But this indirect benefit is not sufficient to bring the society within the class traditionally recognized as charities."

In the State of Illinois the American Medical Association sought exemption from payment of contributions under an Unemployment Compensation Act because it engaged in activities which complied with the exemption features of the act. The Supreme Court of that state held that the association was not exempt because a substantial portion of its efforts and income went "toward protecting and furthering economic benefits to the individual members of the association" and not for exempt purposes. American Medical Ass'n. v. Board of Review, 392 Ill. 614, 65 N.E.2d 350. This court in Sioux Falls Post No. 15 v. Williamson, 73 S.D. 250, 41 N.W.2d 647, pointed out that the Illinois case was not applicable for the reason that the element of personal advantage to members of the American Legion was lacking. This court in that case held that under the unemployment compensation act "It is the destination of the income not the source that determines exemption." The decision is not here precisely in point, but lends inferentially support to the conclusion that the property of a benevolent organization is not used exclusively for the purposes for which it was organized if its activities and income inure primarily to the benefit of its members, even though there are incidental benefits to the public.

We conclude from the record here presented that the property of the respondent association is not exempt from the taxes imposed for the years in question. The objectives of the association are highly laudable and it is evident that dissemination of health information and other public services inure to the benefit of the public. We have heretofore observed that under the present provisions of our exemption statute property to be exempt must not only belong to a benevolent organization, but must also be used "exclusively" for benevolent purposes. In other words, the nature of the use determines the tax exemption character of the property. It fairly appears from the evidence

that there are elements of personal advantages and profit to members of the association that differ from those inuring to the public. The activities and expenditures of the association do not sustain its claim that the property is used exclusively—that is, primarily—for a benevolent or other purpose warranting exemption.

And see International College of Surgeons v. Brenza, 8 Ill.2d 141, 133 N.E.2d 269, 61 A.L.R.2d 1027; Northeast Osteopathic Hospital v. Keitel, 355 Mo. 740, 197 S.W.2d 970; Medical Soc. of Kings County v. Neff, 34 App.Div. 83, 53 N.Y.S. 1077.

The judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

RENTTO, P. J., and BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, J., dissents.

HANSON, Judge (dissenting).

The trial court determined the South Dakota State Medical Association to be a benevolent society within the meaning of our tax exemption statute and entitled to a proportionate exemption from taxes on its headquarters building situated in Sioux Falls. The judgment should be affirmed, in my opinion.

According to SDC 57.0311 all property belonging to a benevolent society and used exclusively for benevolent purposes shall be exempt from taxation. The statute goes on to describe the term "benevolent society" as including "all lodges, patriotic organizations, memorial associations, educational associations, cemetery associations, **and similar** institutions, operating without profit and devoting their resources to the promotion of virtue by charitable, educational, ritualistic, ceremonial, literary or other **similar methods,** or by any or all of such methods". In Dakota Lodge No. 1, I.O.O.F. v. Yankton County, 56 S.D. 234, 228 N.W. 238, this court construed the meaning of the word "benevolent" appearing in our tax exemption statute. The court said "we

must presume that the word was used in the same sense as it is used by the Legislature in other kindred statutes; not merely in statutes on the same subject, but in statutes on cognate subjects". Reference was then made to our statutes relating to "Religious, Educational, and Benevolent Corporations" from which the court concluded that the word "benevolent" was used in its broadest sense and was not synonymous with "charitable". The court concluded that "The meaning thus attached by the Legislature, through a long period of years, to the word 'benevolent,' as used in designating the character of societies for the purpose of incorporation, cannot be ignored in endeavoring to ascertain the meaning attached to the use of the same word in designating the societies whose property shall be exempt from taxation, and we think that, in providing for the exemption of all property belonging to any such charitable, benevolent, or religious society, the Legislature must have contemplated the inclusion of such societies as were deemed benevolent societies for the purpose of incorporation as such".

Turning then to our Benevolent Corporation Act, under which the South Dakota Medical Association is incorporated, it appears from SDC 11.1401 that "Associations for benevolent and charitable purposes to establish and maintain hospitals and infirmaries for the cure of the sick and support of the aged and indigent, asylums for orphans, and lodges, chapters, posts, encampments, councils, commanderies, and other organizations, grand or subordinate, of the fraternities or associations commonly known as the Free and Accepted Masons, Independent Orders of Odd Fellows, Grand Army of the Republic, American Legion, Knights of Pythias, Ancient Order of United Workmen, Knights of Columbus, and **other fraternal, benevolent, or charitable fraternities or associations,** may become incorporated" under this chapter. SDC 11.1402 prescribes the contents of articles of incorporation for "Any such benevolent association, lodge, chapter, post, encampment, council, commandery, **or other similar organization".**

Many different kinds of fraternal, benevolent, and charitable organizations are entitled to be chartered under our Benevolent Corporation Act. All are not specifically named therein.

Various service organizations, for example, are similar in character, purpose, and practices to the American Legion. Labor unions are similar to the Ancient Order of United Workmen. Likewise, an association of medical doctors is similarly related. At least the public good and benevolent practices of a medical association can be equated with a labor union. The South Dakota Medical Association was, therefore, properly chartered as a benevolent corporation. The trial court found it was not organized for profit and is sustained by membership dues, fees and charges required to meet the cost of services rendered to its members and allied organizations promoting health work. The court further found its practices were of a benevolent nature and consistent with its objectives and purposes and "such practices are designed to afford protection, relief, or beneficence to its members or are of direct benefit to the public. Such latter programs include providing medical scholarships, assistance to students of the South Dakota Medical School, providing and distributing public health literature and health information, assistance to the South Dakota State Board of Medical Examiners, a community doctor placement service, distribution of information relative to medical services, maintenance of medical grievances committee, and assistance in the establishment and operation of clinics free to the public." There are ample substantial and credible facts sustaining these findings of the trial court.

It is indicated by this court in the case of South Dakota Sigma Chapter House Ass'n. v. Clay County, 65 S.D. 559, 276 N.W. 258, that if an organization or association has been properly chartered under our Benevolent Corporation Act, it cannot be denied an exemption from taxation if its practices are in conformity with its tenets. According, the South Dakota Medical Association is a benevolent corporation and entitled to exemption from taxation of its headquarters building in proportion to the beneficent use made of the building by the association. The nonbenevolent use of the building made by the South Dakota Medical Services Corporation was properly assessed and taxed in accordance with SDC 57.0311, subsection (3) (b), which allows an apportionment to be made between benevolent and nonbenevolent use of property.