S. D. ED. ASS'N, Appellant v. Dromey, et al., Respondents

(188 N.W.2d 833)

(File No. 10823. Opinion filed July 29, 1971)

Rehearing denied August 23, 1971.

Martens, Goldsmith, May, Porter & Adam, Pierre, for plaintiff-appellant.

Keith A. Tidball, State's Atty., Edward M. Blando, Deputy State's Atty., Pierre, for defendants-respondents.

BANDY, Judge.*

Pursuant to the requirements of SDCL 10-4-15 the South Dakota Education Association, a corporation, made application claiming tax exempt status for its property in Pierre, Hughes County, South Dakota. Upon recommendation of the Director of Taxation of that county the Board of County Commissioners, sitting as the County Board of Equalization, denied the application. On appeal the State Board of Equalization affirmed the Hughes County Board. The matter was appealed to the Circuit Court of Hughes County which, after hearing, found the property to be subject to taxation. The present appeal followed.

While the express wording of the last sentence of SDCL 10-11-42 would seem to prevent a multiple appeal in all instances, SDCL 10-11-43 expressly providing for appeals from decisions of the State Board of Equalization makes it clear that SDCL 10-11-42 is only intended to prevent appeals to the State Board of Equalization following an appeal to the Circuit Court.

Some slight contention is made that Ch. 316, Laws of 1967, now SDCL 10-4-15 through 22, is unconstitutional in that it delegates powers and functions to the County Board of Equalization without sufficient guides or standards. There is no merit in this claim.

SDCL 10-4-1 makes all property in this state subject to taxation unless expressly excepted by statute. SDCL 10-4-9

---

*Acting as judge of the Supreme Court by appointment pursuant to Ch. 153, Laws of 1971.

is the only exemption statute which could possibly apply to the property here involved. The appellant has made its claim under that statute. SDCL 10-11-29 requires the County Board of Equalization to place property which may have been omitted through error or oversight on the tax books. The only effect of Ch. 316, Laws of 1967, is to call attention to specific properties claiming exemption and require the County Board of Equalization to perform the duty of determining whether each of such properties comes within the statutes granting exemption. It seems rather pointless to contend that the very statute under which the appellant seeks exemption is unconstitutional. In such case the property would clearly be taxable under SDCL 10-4-1.

It is urged that the appellant is, by virtue of the provisions of SDCL 10-4-9, a "benevolent society" and is therefore entitled to exemption of its property. The applicable portions of this statute read:

> "All property belonging to any charitable, benevolent, or religious society and used exclusively for charitable, benevolent, or religious purposes, shall be exempt from taxation. * * * The term 'benevolent society' as used herein shall include all * * * educational associations * * * operating without profit and devoting their resources to the promotion of virtue by * * * educational * * * methods."

Examination of this statute discloses that it does not purport to grant exemption to all property of all educational associations operating without profit and devoting their resources to the promotion of virtue by educational methods. Organizations which satisfy that portion of the statute are merely entitled to be classified as "benevolent" societies. Again, mere ownership of property by a "benevolent society" is not the criterion for tax exemption. It is only property which is "used exclusively for * * * benevolent * * * purposes".

In South Dakota State Medical Association v. Jones, 82 S.D. 374, 146 N.W.2d 725, this court recognized that the sev-

eral limitations above enumerated are contained in this statute and said:

"Whether the property in question was devoted to benevolent purposes is a question of fact and the burden of proof is on the association to show that the specific property for which exemption is claimed is within the contemplation of the statute."

Inclusion of the words "used exclusively" would support the conclusion that any use whatever for purposes other than benevolent would require denial of exempt status. However, in State ex rel. Eveland v. Erickson, 44 S.D. 63, 182 N.W. 315, this court, predicating its opinion somewhat upon the provisions of Art. 8, § 1 of the South Dakota Constitution, determined that a strict construction must be a reasonable construction. This was adhered to in National College of Business v. Pennington County, 82 S.D. 391, 146 N.W.2d 731.

The phrase "used exclusively for * * * benevolent * * * purposes" prompted this court to say in South Dakota State Medical Association v. Jones, supra, that the test is the "purpose of the use". In that opinion, in amplification of the test, this court quoted from Massachusetts Medical Soc. v. Assessors of Boston, 340 Mass. 327, 164 N.E.2d 325:

"An institution will be classed as charitable if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work."

While the record before this court would support the contention that the work of the South Dakota Education Association is, in some degree, beneficial to the students in the common schools of South Dakota, the question presently before this court is whether the appellant has sustained its burden of proving that primacy of purpose?

The trial court found:

"The property in question is not used exclusively for charitable, benevolent or religious purposes; and it is further found that the primary purpose of the S.D.E.A. is for the advancement of its members."

■ ■ The precise question then is whether, on the record made by the appellant alone, it must be said that this finding is "clearly erroneous". SDCL 15-6-52(a). In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455. The cited statutory rule also contains the provision "and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The application for exemption, prepared and filed by the Executive Secretary of the South Dakota Education Association, is on a printed form provided by the Commissioner of Revenue of the State of South Dakota. In line with the statutory provisions for exemption it lists 17 main and subclassifications. Among these are "Educational Institution (Non-profit)" and under the main heading of "Benevolent Society" it has a sub-classification of "Educational Association".

In point of fact, the application now before the court lists the applicant as an "Educational Institution (Non-profit)" and although the Executive Secretary testified that this was probably the result of mistake and oversight on his part, no application to amend or change was made before the County Board of Equalization, the State Board of Equalization or the Circuit Court.

The appellant called but one witness, its Executive Secretary. The thrust of his testimony was toward establishment of the claim that the major objective of the South Dakota Education Association is improvement of the professional skills of its teacher members, redounding to the benefit of education. It is well illustrated in the following answer:

"Well, we feel that the purpose of our organization is to improve teachers and we feel that advancement or (sic) the causes of education has been stated in our By-laws as the major objective and we feel

that you cannot improve the quality of teachers without helping education or vice versa".

Accepted at its face value this would appear to be no more than the work of "Educational Institutions", an extension of the education courses in colleges and universities. There is no claim of direct contact with any common school student.

The Articles of Incorporation of the South Dakota Educational Association do nothing to support the present claim of the appellant. This incorporation was accomplished in 1907 using a printed form which is in no manner applicable to the aims and objects which are now claimed. This form was designed to be used by a fraternal lodge and contains language appropriate to such an organization. To illustrate, one provision is, "the corporation * * * and its members shall be subject to the Grand, Supreme or Sovereign Lodge." The Articles restrict property ownership to $1,000.00 notwithstanding that its present property is far in excess of that amount. There is in evidence an exhibit designated as "Constitution and By-laws" purporting to have been adopted some sixty years after the date of incorporation and not shown to have been filed with the Secretary of State. This document gives the "Objects" of the Association as "The professional improvement of its members" and "The advancement of the school interests of the State".

At the conclusion of the examination of the Executive Secretary the trial judge conducted his own rather extensive examination of the witness. This developed facets not entirely in keeping with the prior testimony:

"Q. Now, with regard to the work that you do and the purposes for which you are organized as you have explained here on the stand, it is also true, is it not, that you do considerable lobbying at the Legislature?

A. Yes. * * *

Q. And this in effect, and many times, actually takes the form of supporting higher teacher salaries, doesn't it, you support this?

A. Indirectly since we support legislation which would improve the ability of school districts to financially support themselves.

Q. What do you mean indirectly, if they can support themselves better they can pay higher school salaries?

A. That's correct. * * *

Q. And the educational program is the higher salary?

A. Associated with it.

Q. Because if you pay higher salaries you feel you will get better teachers, better qualified teachers?

A. That's right. I think that could be documented.

Q. Well, whatever purpose do you have then besides that? This insurance program that you have, is that for the benefit of education?

A. In so much as it provides some security for the teacher who we feel will perform better because of that security. We feel that when you improve professionally the members of the association, you actually produce a better educational program in the classroom, the teacher who is satisfied and happy with his work is a teacher who is going to do a better job in the classroom."

The By-Laws appearing in the settled record add some further bits of information. These provide that the dues of Active Members are fixed by the Directors

" * * * on a graduated salary basis, and the income therefrom shall be allocated for purposes that best serve the interests of membership."

Section 30 of these By-Laws provides:

"It shall be the duty of the Executive Secretary and the SDEA Office staff to keep voting records on all members of the legislature on matters pertaining to education legislation, and to publish these records in the SDEA **Journal** and in the SDEA **News** as soon

after the close of each legislative session as is convenient."

Exhibit 5, describing itself as the "SDEA Platform" recommends the adoption of a minimum salary schedule with "annual increments as recommended annually by the SDEA Teacher Welfare Commission".

Under the heading of "Fringe Benefits" it requests a legislative appropriation of funds to pay accrued annuity liabilities, to increase annuities for service prior to 1959 and make the cost thereof an obligation of the General Fund of the State Treasury, that the Legislature shall establish a policy granting a minimum of ten days sick leave with full pay in each year with unlimited accumulation.

Under the heading of "Retired Teachers" the Legislature is requested to provide a pension for teachers who retired prior to July 1, 1959.

Under the heading of "Employment Practices" the Legislature is asked to require assignment of reasons for non-re-election of a teacher and a hearing thereon by the boards of education.

Several Annual Audits were offered and received in evidence. From one of these, the most recent one, it appears that the expense of printing the SDEA Journal and the SDEA News, including editorial salary, was $34,441.37. In his testimony, the Executive Secretary said that the Journal was devoted to articles on education and the News was a listing of items of interest to the membership. Section 5 of the SDEA Constitution refers to one or the other of these publications as "the official organ of the Association". No issues of either of these publications were offered in evidence.

Public relations expenditures, including the salary of the Director, were $17,262.20.

"Premiums paid on teachers liability insurance" were $1,964.25.

The accounting firm listed "Net equity of membership in association" at $381,133.11. There is nothing in the rec-

ord to indicate what disposition of this equity would be made in the event of a dissolution of the corporation.

In one of the reports a fund is carried for "lobbying fund for teacher retirement".

In the various audit reports "Legislative Expenses" ran as high as $4,020.15 in one year.

On the record the finding of the trial court is not clearly erroneous.

Affirmed.

RENTTO, P. J., BIEGELMEIER and WOLLMAN, JJ., concur.

HANSON, J. dissents.

BANDY, Retired Circuit Judge, sitting for WINANS, J., disqualified.

HANSON, Judge (dissenting).

In my opinion, the South Dakota Education Association is a "benevolent society" within the meaning of SDCL 10-4-9 and the proportionate part of its headquarters building in Pierre, South Dakota, is exempt from taxation. See dissent, South Dakota State Medical Association v. Jones, 82 S.D. 374, 146 N.W.2d 725.