289 N.W.2d 247 (1980)
In the Matter of A. I., Alleged Dependent Child.
No. 12774.
Supreme Court of South Dakota.
Argued November 14, 1979.
Decided February 27, 1980.
*248 Janice C. Godtland, Asst. Atty. Gen., Pierre, for respondent State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
Mary Sue Donohue of Donohue & Donohue, Sioux Falls, for child.
John C. Quaintance, Sioux Falls, for appellant father.
FOSHEIM, Justice.
This is an appeal from an adjudication of dependency and neglect and a disposition terminating appellant-father's parental rights. We affirm.
The subject child, A.I., was born to appellant and K.K. in mid-1978. The parents lived together out of wedlock. The evidence reveals that on October 5, 1978, K.K. brought A.I. to a hospital for treatment of a respiratory problem. The examining pediatrician, however, noticed bruises located about the face, head, neck, chest, back, buttock, and left leg. X-rays revealed a broken arm. The buttock also exhibited an excoriation of the skin due to the chemical breakdown of urine. The physician's diagnosis was pneumonia and "battered child syndrome."
Adjudicatory and dispositional hearings were held in late November and early December of 1978. Testimony established that K.K. had offered various and conflicting explanations for A.I.'s condition. A Sioux Falls police detective quoted K.K. as saying the child fell out of her crib and bruised her head and also bumped her head on a stroller tray. She also claimed that she dropped the baby on the floor in an attempt to protect herself from an assault by another person. She reiterated the crib and assault incidents to an investigating social worker, but this time stated that A.I. actually fell out of the stroller onto the street. K.K. and appellant subsequently reverted to the original stroller tray version and further claimed that some of the child's symptoms were an allergic reaction to their pet cat. K.K. gave the crib explanation to examining medical personnel, but also expressed her belief that an acquaintance was responsible for the bruises and fractured arm. At the same time, according to the detective's testimony, she admitted throwing the child into the crib on two occasions and once striking the baby on the arm with the side of her hand. An acquaintance testified that, on one occasion, she witnessed K.K. strike the infant and that, as a general matter, K.K. treated the child very roughly. Various persons testified that the bruises on A.I.'s body were readily visible to the casual observer.
Appellant contends the trial court erred in finding that he did not provide proper parental care and, while present in the home and acting as a custodian of A.I., permitted her to suffer mistreatment and abuse. It is true that no evidence was introduced regarding direct acts of appellant which contributed to A.I.'s injuries. The obvious extent and appalling nature of the child's injuries, however, indicate that appellant knew or should have known of her condition. This fact, coupled with his failure to seek medical attention for the child's injuries, leads us to conclude that the findings of the trial court were not clearly erroneous. SDCL 15-6-52(a); Matter of B.E., 287 N.W.2d 91 (S.D.1979); In the Interest of D.K., 245 N.W.2d 644 (S.D.1976).
We cannot agree with appellant's further contention that certain findings of fact and conclusions of law entered for purposes of disposition were erroneous and that the trial court erred in not employing the least restrictive alternative. The court found that appellant was immature and exhibited a lack of parental care and concern for A.I. Testimony at the dispositional hearing established that appellant did not participate during visits (from the Visiting Nurses Association) designed to aid the parents in developing adequate parenting skills. On at least one occasion, he preferred to work on model airplanes. His lack of interest was further evidenced by his failure to appear at the dispositional hearing. Appellant claims that the court should not have noted this fact because the reason for his absence related to sleeping patterns necessitated by night employment. However, appellant's *249 refusal to briefly modify his sleeping schedule in order to appear at and participate in a proceeding vital to his future relationship with his own child is significant. This is particularly true where the social worker testified that appellant's attitude toward counseling sessions and court proceedings was one of apathy and indifference. Further, during visits between the parents and child after the child's removal from their custody, appellant displayed little, if any, interest in the child's well-being or in developing his own parenting skills. Rather, his participation during these sessions was largely limited to discussion of subjects unrelated to the child or the parent-child relationship.
Appellant also claims that the trial court erred in finding he knew, or should have known, of the extensive bruising suffered by the child and that he failed to protect the infant. The record, however, clearly establishes that the trauma suffered by this child was apparent to casual observers, including neighbors.
Appellant also contends that the trial court did not employ the least restrictive alternative available and that his parental rights were terminated primarily as a result of the acts and omissions of the child's mother. We recognize the fundamental character of parental rights; however, the best interests of the child must always prevail. Matter of R.Z.F., 284 N.W.2d 879 (S.D.1979); Matter of N.J.W., 273 N.W.2d 134 (S.D.1978); In the Interest of D.K., supra. The Visiting Nurses Association rendered aid on a daily basis for two weeks following the birth of A.I. These visits, the purpose of which was to provide instruction on basic parenting skills such as proper feeding, bathing, parent-child interaction and symptom recognition, continued (albeit less frequently) until sometime prior to the child's hospitalization. Between the time of A.I.'s release from the hospital and the date of the dispositional hearing, weekly visits between the parents and child were arranged. As noted earlier, appellant did not participate in the instructional sessions provided by the Visiting Nurses Association and his attitude toward the child during the latter visitations was apathetic. The testimony of one of the visiting nurses, as well as that of the social worker who arranged the weekly parent-child meetings, firmly established that such sessions did not significantly improve either the level of concern for the child or the quality of appellant's relationship with the infant. We have held that where efforts to aid parents are unavailing, termination of parental rights is justified. Matter of R.Z.F., supra; In the Matter of C.E. and D.E., 283 N.W.2d 554 (S.D.1979); Matter of N.J.W., supra. Neither can we agree that appellant's parental rights were terminated primarily due to the acts or omissions of K.K. On the contrary, had appellant given minimal attention to his responsibilities as a father, it is unlikely that the neglect of this child would have reached the unfortunate level which existed.
Appellant disputes the disposition because no written social study was introduced into evidence as required by SDCL 26-8-22.11.[1] Appellant, however, failed to object to the absence of a social report. Generally, error must be brought to the attention of the trial court as soon as it is apparent and failure to object at a time when the court can take corrective action precludes appellate review. State v. Reiman, 284 N.W.2d 860 (S.D.1979). Assuming, however, the absence of a social report had been timely noted, such error would not be prejudicial. The investigating social worker testified at length and was carefully cross-examined. That essentially fulfilled the same function as a written social report. Indeed, the added opportunity to cross-examine provided greater protection for appellant's rights.
*250 Finally, appellant urges that certain testimony relating to statements made by K.K. was inadmissible due to violations of K.K.'s Fifth and Sixth Amendment rights. The nature of the constitutional prohibitions involved, however, clearly identify the victim of any violation as the individual who challenges the admission of his own confession or fruits derived therefrom. Thus, we need not inquire into the circumstances surrounding K.K.'s statements because appellant lacks standing to assert claims that are personal to K.K. Cf., Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).
We have reviewed the remaining assignments of error and find them to be without merit. The order of adjudication and the decree of disposition are affirmed.
WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.
HENDERSON, J., concurs in result.
HENDERSON, Justice (concurring in result).
I join in the holding and opinion of the court because I agree with its conclusion on the merits: the acts perpetrated against this child by the mother (who did not appeal the termination of her parental rights) and those of the father who acquiesced therein, cannot be condoned.
I write separately to express an opinion which is inconsistent with the majority opinion pertaining to the social study issue.
The court makes perfectly clear that no written social study was introduced into evidence. It further observes that SDCL 26-8-22.11 requires a social study. This infraction of our state's laws on dependent children is seemingly forgiven by trial counsel's failure to timely object. I part company with the court's opinion which fastens itself to the concept that had there been a timely objection, "such error would not be prejudicial."
In my opinion, it would be highly prejudicial. The state cannot substitute the testimony of a social worker for the statutorily required social study. Our legislature mandated the presentation of a written social study and not the oral testimony of a social worker. Social studies are an artful, helpful tool for the overburdened trial judges of this state. Expertise is available, through their employment, which can give a trial judge a keen insight into a child's environment, development, and treatment. A social study can reveal a viable alternative to termination of parental rights. Furthermore, through the use of social studies, counsel for the state and the parents may gain valuable information which may well-establish factors that must be probed in greater depth in determining the best interests of the child. Social studies simply produce knowledge. A defense lawyer could be dissuaded from a particular posture that he has assumed in the case. Counsel for parents, by having a social study available prior to the dispositional hearing, may more effectively prepare to meet unfounded charges. It is unfair when a child's life and parent's interests hang in the balance, to cause counsel to confront a chief witness for the first time. A prosecutor could be persuaded to abandon his quest for parental termination. Social studies, properly received into evidence, may very well call to the attention of the reviewing court circumstances of a child's environment and treatment which would bear heavily in an appellate review.
The omission of a social study ignores a vital step in safeguarding fundamental rights in the dispositional process. The potential ramifications that flow from the disposition militate in favor of a thorough investigation.
Lastly, I continue to fear the intrusion of this court or any other court into the law-making process. We must stay with the basics: the legislature shall make the laws; we should honor and interpret them when called upon to do so. I cannot believe that we can blithely cast aside the legislative mandate of social studies by holding that a *251 social worker's testimony is something of similar value. By judicial fiat, we cannot cast aside legislative enactments and hold them for naught.
NOTES
[1] SDCL 26-8-22.11 states:

After making an order of adjudication, the court shall hear evidence on the question of the proper disposition best serving the interests of the child and the public.
Such evidence shall include, but not necessarily be limited to, the social study and other reports.