**LUTHERANS OUTDOORS IN SOUTH DAKOTA, INC., Plaintiff and Appellee,**

v.

**SOUTH DAKOTA STATE BOARD OF EQUALIZATION, Defendant and Appellee,**

and

**Custer County, South Dakota, Intervenor and Appellant.**

Nos. 17045, 17067.

Supreme Court of South Dakota.

Argued Nov. 26, 1990.

Decided Aug. 28, 1991.

Rehearing Denied Oct. 2, 1991.

Glen H. Johnson and Robert J. Griggs, Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for plaintiff and appellee, Lutherans Outdoors.

Roger Tellinghuisen, Atty. Gen., John Dewell and David D. Wiest, Asst. Attys. Gen., South Dakota Dept. of Revenue, Pierre, for defendant and appellee, State Bd. of Equalization.

Patrick M. Ginsbach and Jane M. Farrell, Farrell, Farrell & Ginsbach, Hot Springs, for intervenor and appellant.

SABERS, Justice.

County appeals decision of circuit court reversing in part County's property tax assessment against a religious society which cross-appeals.

### Facts

Lutherans Outdoors (Lutheran) is a non-profit corporation associated with the South Dakota Synod of the Evangelical Lutheran Church of America (Church). Lutheran owns and operates two church camps of between 150 and 200 acres apiece in Custer County (County). One is named Outlaw Ranch (Outlaw) and the other is Atlantic Mountain Ranch (Atlantic Mountain).

Outlaw is a multi-purpose, year-round facility whose uses include family and youth camping, retreats, environmental education and an elderhostel program. Although Outlaw is used mainly by members of Church, it is sometimes rented by Lutheran to persons not affiliated with Church for secular purposes. In contrast, Atlantic Mountain is apparently used exclusively by members of Church for youth camping retreats during the summer months.

Prior to 1986, SDCL 10–4–9 exempted from property taxes "[a]ll property belonging to any charitable, benevolent, or religious society and used exclusively for charitable, benevolent, or religious purposes[.]" As it then existed, the statute defined the term "charitable society" to include associations like Lutheran which owned or oper-

ated a "camp . . . as a part of the charitable or educational program of any church[.]" The improvements at Outlaw enjoyed a 100% property tax exemption from County on this basis until 1986. In addition, 80 acres of agricultural land at Outlaw were exempt from property taxes under SDCL 10–4–10.[1] Atlantic Mountain had no exemptions.

In 1986, the legislature revised SDCL ch. 10–4. Among the revisions were amendments to SDCL 10–4–9 which eliminated any reference to "charitable societies" operating "camps" in conjunction with church bodies.[2]

Subsequent to these statutory amendments, County changed Outlaw's property tax exemption in 1987 from 100% to 35% because 65% of Outlaw's budget came from its own earnings and only 35% was subsidized by tax exempt Church. County allowed Outlaw to keep its 80–acre exemption under SDCL 10–4–10. County made the same assessment against Outlaw in 1988. County rejected Lutheran's application for additional religious property tax exemptions for Atlantic Mountain improvements and agricultural land under SDCL 10–4–9 and 10–4–10.

Lutheran appealed County's 1988 ruling to the State Board of Equalization (Board). Board affirmed County's decision on September 8, 1988. Lutheran appealed Board's ruling to circuit court and the court partially reversed County and Board on January 15, 1990. The court agreed with County and Board that Outlaw's improvements are not 100% tax exempt under SDCL 10–4–9. The court also agreed with County and Board that Lutheran is entitled to only one 80–acre exemption under SDCL 10–4–10 despite two camps. However, the court found that the Outlaw improvements were 85.2% tax exempt, rather than 35% tax exempt, under the formula in SDCL 10–4–12 [3] for assessing mixed use facilities. The court also found that the Atlantic Mountain improvements were entitled to a 100% property tax exemption under SDCL 10–4–9.

On appeal, County contests the tax exempt percentage on Outlaw improvements and the complete tax exemption for Atlantic Mountain improvements. On cross-appeal, Lutheran argues that the Outlaw improvements are entitled to a 100% tax exemption, and that Outlaw and Atlantic

1.  SDCL 10–4–10 provides in part: "Agricultural land owned by a charitable, benevolent or religious society as described in §§ 10–4–9 to 10–4–9.2, inclusive, and used exclusively for charitable, benevolent or religious purposes upon which the buildings used by such society or institution are situated is exempt from taxation up to but not exceeding eighty acres. . . . However, all other agricultural land owned by such societies or institutions shall be taxed as other agricultural land is taxed."
    This language is substantially the same as it was before the 1986 amendments, except that it previously omitted the phrase "and used exclusively for charitable, benevolent or religious purposes."

2.  SDCL 10–4–9 now provides: "Property owned by any religious society and used exclusively for religious purposes, is exempt from taxation. Property of a religious society is exempt from taxation if such property is a building or structure used exclusively for religious purposes, is a lot owned by a religious society for the exclusive purpose of parking vehicles owned by members of such society and is not rented or leased to nonmembers of such society, is an educational plant owned and operated by a religious society or is a building or structure used to house any cleric of a religious society."

SDCL §§ 10–4–9.1 through 10–4–9.3 also provide exemptions for property owned by a "public charity" offering relief to poor persons, property owned by a "benevolent organization or society" and property owned by a nonprofit health care corporation. There is, however, no mention of the "charitable society" category which explicitly included church camps under the pre–1986 version of SDCL 10–4–9.

3.  SDCL 10–4–12 provides in part: "If property owned by any . . . religious society described in § [ ] 10–4–9 . . . other than agricultural land, is used partly . . . for . . . religious purposes, and the remaining part is occupied, rented or used for other than . . . religious purposes, such portion . . . shall be taxed as other property of the same class is taxed. For the purpose of determining the value of the taxable portion of the property, the appraised value of the entire property shall be multiplied by the percentage of the entire property used for other than . . . religious purposes. The resulting value shall be multiplied by the percentage of time such property is used for other than . . . religious purposes. The resulting value shall be the assessed value for taxation purposes."

Mountain should *each* be entitled to the 80–acre agricultural land exemption.

### The Statutory Scheme

SDCL 10–4–9 provides a complete property tax exemption for *improvements* owned by a religious society which are either: (1) "a building or structure used exclusively for religious purposes"; (2) a parking lot for members; (3) a school; or (4) a residence for clergy. The deletion of any specific reference to church camps by the 1986 amendment to this statute does not mean that church camp improvements can never be entitled to a complete property tax exemption. It only means that such improvements are not *automatically* entitled to the exemption, and that their exempt status under SDCL 10–4–9 depends on whether they are "used exclusively for religious purposes."

■ It is settled law in South Dakota that whether property is used "exclusively" for religious purposes is to be construed reasonably, and improvements owned by a religious society whose "primary" or "dominant" purpose is for religious use qualifies for the tax exemption provided in SDCL 10–4–9. *South Dakota Education Association v. Dromey*, 85 S.D. 630, 188 N.W.2d 833, 834–835 (1971); *South Dakota Medical Association v. Jones*, 82 S.D. 374, 146 N.W.2d 725, 728 (1966). *See also* Froehlich, *South Dakota Real Property Tax Exemptions: Time For a Legislative Review*, 27 S.D.L.Rev. 1, 8 (1982).

■ Moreover, a primary or dominant religious purpose need not be defined "solely in terms of religious worship." *City of Rapid City v. Kahler*, 334 N.W.2d 510, 512 (S.D.1983). Some jurisdictions come close to making "religious use" and "worship service" equivalent terms. *See, e.g., Diocese of Buffalo, N.Y. v. Buczkowski*, 112 Misc.2d 336, 446 N.Y.S.2d 1015, 1019 (N.Y.Sup.Ct.), *aff'd*, 90 A.D.2d 994, 456 N.Y.S.2d 909 (1982). However, that is not the law in South Dakota. In 1986, when SDCL ch. 10–4 was being revised, our legislature considered a significantly more restrictive definition of religious purpose

which would have legislatively overruled *Dromey* and *Jones*, but ultimately decided against the change. *Compare* Legis.Res.Council, 1 1986 House Bills 1017 (61st session) *with* SDCL §§ 10–4–9 to –9.2; 10–4–11, –12. Therefore, the test for a complete property tax exemption under SDCL 10–4–9 is still "primary or dominant religious purpose." Whether improvements owned by a religious society are being used primarily or predominantly for a religious purpose is a question of fact for the trial court, and this court will not overturn its determination unless it is "clearly erroneous." *Dromey*, 188 N.W.2d at 834–835.

SDCL 10–4–10 is a companion statute to SDCL 10–4–9. It provides for the property tax exemption of up to 80 acres of unimproved *agricultural* land owned by a religious society upon which improvements exempt from taxes under SDCL 10–4–9 are situated.

Finally, SDCL 10–4–12 provides an alternative to SDCL 10–4–9 by permitting a *partial* tax exemption for improvements which are owned by a religious society but which do not qualify for the complete tax exemption under SDCL 10–4–9 because they are not used *exclusively* (i.e., primarily or predominantly) for religious purposes. Where an entire facility is sometimes used for non-exempt purposes, SDCL 10–4–12 provides the following formula: appraised value of property X percentage of time property is used for non-exempt purposes = taxable value.

### 1. Whether Outlaw Is Used Exclusively for Religious Purposes

■ Lutheran, which owns Outlaw, is a religious society within the meaning of SDCL 10–4–9. County does not contest this. The circuit court ruled that Outlaw is not entitled to the 100% tax exemption under SDCL 10–4–9 because it is not used "exclusively" for religious purposes. Rather, Outlaw was rented part of the time during the 1988 tax year to persons and organizations not affiliated with Church for non-religious activities. Therefore, the court determined that Outlaw was entitled

to only a pro rata property tax exemption under the formula provided in SDCL 10–4–12. Since these findings are not clearly erroneous, they are affirmed.

### 2. *Percentage of Religious Use at Outlaw*

Having upheld the determination of County and Board that Outlaw was only partially tax exempt, the trial court's next question was the correct percentage under SDCL 10–4–12. The court found that Outlaw was used for a total of 261 days out of a possible 365 days during the 1988 tax year, leaving 104 idle days. Of the 261 use days, the Court found that 166 days were clearly religious use days, 54 days were clearly non-religious use days, and the remaining 41 use days were devoted to environmental education programs for the benefit of students in South Dakota schools. Because SDCL 10–4–9 provides an exemption for an "educational plant owned and operated by a religious society," the court placed the 41 environmental educational days in the tax exempt column. The court then divided the 54 non-religious use days by the 365 days in the tax year and arrived at a figure of 14.8% as the non-exempt portion of Outlaw's use. Thus, the court concluded that the Outlaw improvements were 85.2% tax exempt, and Lutheran was liable for property tax on 14.8% of assessed value.

■ County claims the taxable percentage of Outlaw's assessed value should be the same as the percentage of Outlaw's operating budget which was not subsidized by Church, i.e., 65% rather than 14.8%. However, SDCL 10–4–12 requires a taxable assessment based on the amount of space and time devoted to non-exempt *uses*, not on the amount of income to the facility from allegedly non-exempt *sources*. Therefore, we agree with the trial court in rejecting County's statutorily unfounded method for computing the taxable value of the Outlaw improvements.

County attacks the court's calculation of Outlaw's tax liability under SDCL 10–4–12 in two other ways.

#### a. Environmental Education Program

■ County claims the court erred in determining non-religious use days because, citing SDCL 10–4–9, the court included the 41 days of the environmental education program in the exempt use category. County claims that the 41 environmental education days belong in the taxable use category, so that a total of 95 days, not 54 days, were devoted to non-religious uses during the tax year.

In *National College of Business v. Pennington County*, 82 S.D. 391, 146 N.W.2d 731, 735 (1966), we held that a for-profit business college qualified for tax exempt status under what is now SDCL 10–4–13 because "[t]o the extent that plaintiff's facilities are [used], the state is relieved of its financial obligation to furnish such instruction." We affirmed a denial of an exemption to a beauty school in *South Dakota Hairstyling, Inc. v. Minnehaha County*, 88 S.D. 682, 227 N.W.2d 431, 433 (1975), because the school's subject matter was only "slightly related" to subject matter taught in South Dakota public schools and because the purpose of the school was primarily commercial rather than educational.

There is no suggestion in the record, nor does County contend, that Outlaw's environmental education program is primarily a commercial enterprise. The record shows that certain public schools in South Dakota used the environmental education program provided by Outlaw for up to 41 days during the 1988 tax year. The court found that this program "relieves the taxpayers and the school districts of the financial obligation of providing similar facilities."

While this observation may be correct, it does not entitle these 41 environmental education days to be placed in a tax exempt use category under SDCL 10–4–12. First, SDCL 10–4–9 plainly requires the religious society-owned improvements it exempts from taxation to be either a religious purpose structure, a parking lot, clergy housing, or an "educational plant," i.e., a *school building*. "In arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning."

*Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559, 561 (S.D.1981) (citing *Wood v. Waggoner,* 67 S.D. 365, 293 N.W. 188 (1940)). A specialized instructional program conducted just 41 days during the year does not transform the facility in which it is held into an "educational plant" within the meaning of SDCL 10–4–9. "[S]tatutes allowing a tax exemption are strictly and narrowly construed in favor of the taxing power and are given a reasonable, natural and practical meaning to effectuate the purpose for which the exemption was granted." *Matter of State & City Sales Tax Liability,* 437 N.W.2d 209, 211 (S.D.1989). Therefore, regardless of how relevant to public school curriculum or non-commercial Outlaw's environmental education program may be, it does not come under the tax exemption provided for instructional facilities under SDCL 10–4–9 because it is not a school.

Second, the use of the categories of SDCL 10–4–9 to apply the partial exemption formula in SDCL 10–4–12 is incorrect. SDCL 10–4–9 provides a *complete* property tax exemption for improvements which come within its terms, so that a facility is either an "educational plant" entitled to a 100% exemption, or it is not. If it is not, SDCL 10–4–9 provides for no partial exemption. In contrast, SDCL 10–4–12 sets forth a formula for determining partial exemptions, but the formula is based on the percentage of *religious use.* SDCL 10–4–12 says nothing about non-religious educational programs or "educational plants." Since the trial court concluded that Outlaw is not entitled to the complete exemption provided by SDCL 10–4–9, that statute cannot be used to benefit Outlaw's case under SDCL 10–4–12.

We conclude the court erred in excluding the 41 environmental education days from the taxable use category under SDCL 10–4–12, and we agree with County that a total of 95 days were devoted to non-religious uses at Outlaw during the 1988 tax year.

### b. Allocation of Idle Time

In order to determine the taxable percentage of Outlaw's appraised value, Coun-ty next argues that the 95 non-exempt days should be divided not by 365 days, but by the 261 days of actual use. County complains that the trial court's approach arbitrarily allocated all idle days to religious use when the facility had a mixed use. We agree.

■ SDCL 10–4–12 does not expressly address the question of idle time in a mixed use facility, nor is there South Dakota case law on point. Normally, the rule for construing ambiguous tax laws is that statutes imposing a tax are construed liberally in favor of the taxpayer while statutes providing a tax exemption are construed strictly in favor of the taxing power. *Matter of State & City Sales Tax Liability,* 437 N.W.2d at 211. However, these canons of construction offer little guidance in interpreting SDCL 10–4–12, which in effect imposes a tax *and* provides an exemption within the same formula.

■ It is the rule in at least one jurisdiction that idle time in facilities of mixed use should be allocated pro rata between the religious and the non-religious use because "[i]t is not reasonable to hold that all idle time is attributable to the charitable use.... [P]ro-ration of exemption should be in proportion to use time, that is, comparing time of actual use for charitable and non-charitable purposes without consideration of idle time." *Memphis Development Foundation v. State Board of Equalization,* 653 S.W.2d 266, 270–271 (Tenn.App.), *cert. denied,* (Tenn.1983).

We find the reasoning of the Tennessee court persuasive. If a facility is used for both exempt and non-exempt purposes, there is no reason to assume that all the idle time belongs in the exempt category. Therefore, we hold that idle time in a mixed use facility is to be allocated between exempt and non-exempt categories in the same proportion as actual use time is allocated between the two categories.

We reverse on this point because the trial court divided the non-exempt use days by 365 rather than by 261 to arrive at the non-exempt percentage which it applied to the assessed value of the property. Under

the rule of pro rata allocation of idle time in a mixed use facility, the 95 non-exempt use days should be divided by the total number of use days excluding idle time, i.e. 261, to arrive at the non-exempt percentage to be applied to the assessed value of the property. In this case, that non-exempt percentage is 36.4%, which, when applied to the total assessed value of $523,175, yields a figure of $190,435.70 as the value of the taxable portion of the Outlaw property.

3. *Whether Atlantic Mountain Is Used Exclusively for Religious Purposes*

The circuit court found that "Atlantic Mountain Ranch is used exclusively for religious purposes" and awarded its improvements a complete property tax exemption under SDCL 10–4–9. We will not overturn this finding unless we determine it is "clearly erroneous." *Dromey*, 188 N.W.2d at 834–835.

However, our examination of the findings and the evidence leaves little basis for deciding whether the finding is clearly erroneous or not. Whereas the trial court made extensive findings to support its allocation of use time at Outlaw between exempt and taxable uses, the court made virtually no findings about Atlantic Mountain to support its conclusion that it was used exclusively for religious purposes during the 1988 tax year. Out of 38 findings of fact, only one discusses even in general terms how the Atlantic Mountain improvements are actually used, Finding XX: "Atlantic Mountain Ranch emphasizes a mix of Bible study and Christian worship with an outdoor camping experience." Not only is this inconclusive on the question of whether the Atlantic Mountain improvements are used primarily or predominantly for a religious purpose, but Finding XXIV states:

[Lutheran], during the non-camping season, rents out its *facilities* for *other uses* to alleviate some of the annual ... subsidization of the financial operation of *both camps.*

(Emphasis added). This suggests the possibility the court may have found Atlantic Mountain was also rented out for non-religious activities from time to time.

Testimony at trial indicated that, in contrast to Outlaw, the use of Atlantic Mountain is limited to youth camping during the summer and no adult activities or year-round retreat programs are offered there. However, this testimony offers no clear support for the finding that the primary or dominant purpose of the Atlantic Mountain improvements is religious, as opposed to, e.g., camping. Moreover, the trial transcript contains this exchange between State Board of Equalization attorney John Dewell and Lutheran employee Joe Harber:

Q. [Is] the ecology program at Atlantic Mountain Ranch ... different than what we heard before on what the camping experience was?

A. That's a special week of camp at Atlantic Mountain. The conservation camp was the first week of the program at Atlantic Mountain, the first week of the summer.

Q. That wasn't a religious camp?

A. Not strictly religious camp, no, sir. We had some grace before meals, but the emphasis was not on bible study. I guess ... instead of bible study time, we broke into nature study time.

■ Even if Atlantic Mountain campers are always members of Church, that is not the test for determining the extent of Atlantic Mountain's tax exemption. Under SDCL 10–4–9, a complete tax exemption depends on whether the primary or dominant *purpose* of a facility's use is religious. Under SDCL 10–4–12, the extent of exemption for a mixed use facility depends on the percentage of *time* the facility is used for religious purposes. Under neither statute does the extent of exemption depend on the percentage of religious society members among those who make use of the facility.

In summary, we find nothing in the trial court's findings of fact or the record to support its conclusion that the improvements at Atlantic Mountain are used "exclusively for religious purposes" and are therefore "100% tax exempt." Accordingly, we reverse and remand to the trial court for additional findings on the extent of Atlantic Mountain's use for religious purposes under SDCL 10–4–9 and 10–4–12.

### 4. *Exemption for 80 Acres*

SDCL 10–4–10 provides in part that "[a]gricultural land owned by a ... religious society as described in § [ ] 10–4–9 ... and used exclusively for ... religious purposes upon which the buildings ... are situated is exempt from taxation up to but not exceeding eighty acres." The court concluded that Lutheran "is entitled to receive only one 80–acre exemption under SDCL 10–4–10 in Custer County because both Outlaw Ranch and Atlantic Mountain Ranch are owned by the same religious society."

Lutheran argues that Outlaw and Atlantic Mountain are each entitled to the 80–acre exemption provided in SDCL 10–4–10 because the two parcels of land are entirely non-contiguous, each with its own improvements. County argues that SDCL 10–4–10 entitles Lutheran to only one 80–acre exemption in Custer County, regardless of how many camps it operates there.[4]

We agree with the trial court that a religious society may exempt up to but not exceeding 80 acres under SDCL 10–4–10.

Although the statute is arguably ambiguous on this point, SDCL 10–4–10 is an exemption statute, and the applicable rule of construction is that statutes providing a tax exemption are "strictly and narrowly construed in favor of the taxing power." *Matter of State & City Sales Tax Liability*, 437 N.W.2d at 211; *see also Matter of Townley*, 417 N.W.2d 398, 400 (S.D.1987).

Affirmed as to Issues 1 and 4, reversed as to Issues 2a and 2b, and reversed and remanded as to Issue 3.

MILLER, C.J., and WUEST and HENDERSON, JJ., concur.

AMUNDSON, J., not having been a member of the court at the time this case was argued, did not participate.

---

**4.** Board argues in its brief that in addition to limiting the scope of the agricultural land exemption to eighty acres per religious society, SDCL 10–4–10 makes the exemption available only for property "used exclusively for ... religious purposes." Thus, in Board's view, Lutheran may not claim the 80–acre exemption for agricultural land on which the Outlaw improvements are situated because the Outlaw improvements are not used exclusively for religious purposes within the meaning of SDCL 10–4–9 and 10–4–10. Under this theory, if the Atlantic Mountain improvements are ultimately found to be only partially tax exempt, Lutheran should not have received an agricultural land exemption under SDCL 10–4–10 at all.

We do not reach the merits of Board's contention because it is not properly before this court. The trial court concluded that Lutheran is entitled to only one 80–acre exemption under SDCL 10–4–10 for both Outlaw and Atlantic Mountain because both camps "are owned by the same religious society." The trial court did not identify this exempt eighty acres exclusively with the agricultural land at Atlantic Mountain on the basis that only Atlantic Mountain was used exclusively for religious purposes, nor is there any evidence in the record that this theory was ever presented for the trial court's consideration. Moreover, Board did not challenge the trial court's determination that Lutheran was entitled to one 80–acre exemption, either on direct appeal or by notice of review. Neither did County, despite the fact that County has consistently argued that *neither* Outlaw nor Atlantic Mountain is used exclusively for religious purposes.

"Objections must be made to the trial court to allow it to correct its mistakes. Moreover, an objection not properly raised, briefed, or argued on appeal is deemed abandoned, and we, the reviewing court, will not consider it." *Johnson v. John Deere Co.*, 306 N.W.2d 231, 239 (S.D.1981) (citations omitted).