In the Matter of the APPEAL OF SIOUX VALLEY HOSPITAL ASSOCIATION from the Decision of the State Board of Equalization of the State of South Dakota.

SIOUX VALLEY HOSPITAL
ASSOCIATION, Appellee,

v.

SOUTH DAKOTA STATE BOARD
OF EQUALIZATION,

and

Minnehaha County, South Dakota,
Intervenor and Appellant.

No. 17993.

Supreme Court of South Dakota.

Argued March 17, 1993.

Decided March 16, 1994.

Monte R. Walz, Davenport, Evans, Hurwitz and Smith, Sioux Falls, for appellee.

Peter Gregory, Minnehaha County Deputy State's Atty., Sioux Falls, for intervenor and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This matter arises from the 1989 reassessment of the Wellness Center (Center) at Sioux Valley Hospital (Hospital) in Sioux Falls whereby the Minnehaha County Board of Equalization denied the Center its previous full property tax exemption. After the State Board of Equalization (Board) sustained the decision, Hospital appealed and Minnehaha County intervened.

Following a May 1991 trial, the trial court declared the Center to be 93% tax-exempt for the years 1989, 1990, and 1991. Board appeals raising the following issues:

I. Did the trial court place the burden of proof on Hospital?

II. Did the trial court err in determining that the Center is used primarily for health care and health care related purposes?

III. Did the trial court err in calculating the percentage of property taxable?

IV. Is the Center exempt from property taxes as a public charity?

Based upon the overly broad definition of "human health care and health care related services," we reverse and remand.

## FACTS

"Wellness" is a medical term defined by the South Dakota State Health Plan as "the state of being in which the mind and body work together to maintain a state of optimal health." During 1987, Hospital, a non-profit corporation exempt from income taxes per § 501(c)(3) of the Internal Revenue Code, owned and operated a facility on 43rd Street in Sioux Falls devoted to achieving this state of being.

In 1989, a new 60,992 square feet Wellness Center was opened on 49th Street which included racquetball courts, a basketball/volleyball court, an indoor track, classrooms, indoor swimming pool, a retail sales area, and a cafeteria. (A Rehabilitative Center and Medical Clinic were later added, but their tax status is not challenged here.) New members receive a health assessment to determine health needs. A portion of the membership originates from physician referrals. Although fees are charged, those who cannot afford the cost are eligible for reduced or free memberships. This fact, however, is apparently not well publicized.

When the Center was located on 43rd Street, it was fully exempt from property taxes. This changed in 1988 when Minnehaha County and the Board changed the 100% exempt status to 30% due to the lack of health care related activities and the "recreational" nature of some of the fitness areas. On appeal, the trial court reversed the Board, found the Center to be devoted to health care related activities, and ruled that 93% of the Center's property during 1989, 1990, and 1991 was exempt from property taxes.

## DECISION

I. *Trial court placed the burden of proof on the Hospital.*

 Ambiguous statutes granting tax exemptions are to be strictly construed in favor of the taxing power. *Lutherans Outdoors v. Bd. of Equalization,* 475 N.W.2d 140, 145 (S.D.1991); *Matter of State & City Sales Tax Liability,* 437 N.W.2d 209, 211 (S.D.1989). Cognizant of this burden, Judge Kean, in his second sentence at trial, stated to counsel for Hospital, "Mr. Walz, you may proceed then because you carry the burden of proof at this time."

Nevertheless, Board alleges the trial court did not hold Hospital to the legally required burden. If so, Board should have either

objected or, at the close of Hospital's case, motioned for a directed verdict. *Rather, Board made no effort to document any dispute to the burden until this appeal was filed.*

"Generally, error must be brought to the attention of the trial court as soon as it is apparent and failure to object at a time when the court can take corrective action precludes appellate review." *Matter of Adoption of Baade,* 462 N.W.2d 485, 488 (S.D.1990); *In re A.I.,* 289 N.W.2d 247, 249 (S.D.1980). As the party claiming error, Board had the responsibility to insure that a record was made. SDCL 15–26A–48; *Sioux Enterprises v. Tri–State Refining,* 456 N.W.2d 774, 777 (S.D. 1990). Regardless, Board's brief provides nothing to vouch for its claim and the trial record supports the opposite conclusion. As we are not definitely and firmly convinced that the trial court erred in distributing the burden of proof, we find no reason to address this issue any further. *Wolff v. Royal Ins. Co. of America,* 472 N.W.2d 233 (S.D.1991); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

II. *Trial court erred in defining health care.*

■■■ All property in this state is subject to taxation unless "expressly exempted" by statute. *South Dakota Education Association v. Dromey,* 85 S.D. 630, 188 N.W.2d 833 (1971). SDCL 10–4–9.3 states that non-profit corporations may be exempt if "used primarily for human health care and health care related purposes." However, the statute fails to define these terms.

Consistent with precedent, the trial court sought to give the terms their "plain, ordinary, and popular meaning" by using *Black's Law Dictionary* and *Webster's New Twentieth Century Dictionary* as guides. *See Northwestern Bell v. Public Util. Comm'n,* 467 N.W.2d 468 (S.D.1991); *Lien v. Rowe,* 77 S.D. 422, 92 N.W.2d 922 (1958). "Health care," per the trial court, became the "attention to maintaining a state of soundness of the mind and body, and promoting freedom from pain or sickness." Comparing this definition to "wellness" as defined by the State Health Plan, the trial court concluded that a wellness program implementing lifestyle changes, diet, nutrition and exercise is tax exempt under SDCL 10–4–9.3.

■■■ Again we note that statutes allowing a tax exemption are strictly and narrowly construed in favor of the taxing power and are given a reasonable, natural and practical meaning to effectuate the purpose for which the exemption was granted. *Lutherans Outdoors,* 475 N.W.2d at 145; *State & City Sales Tax Liability,* 437 N.W.2d at 211. Such reasonable, natural and practical meaning, as intended by the Legislature, is best determined through statutory language. *Norgeot v. State,* 334 N.W.2d 501, 503 (S.D.1983). Therefore, we first look to the definition of health care as provided by SDCL 34–12C–1(1):

> any care, treatment, service or procedure to maintain, diagnose or treat a person's physical or mental condition. The term also includes admission to, and personal and custodial care provided by, a licensed health care facility as defined in § 34–12–1.1[.]

This statute, adopted in 1990, was in effect when the trial court rendered its definition. There was no need for the trial court to construct its own version. Furthermore, SDCL 10–4–9.3 provides guidance in its last sentence: "such health care facility must admit all persons for treatment consistent with the facility's ability to provide medical services required by the patient." Said statute refers to "treatment" and "medical services," a clear reference to assistance of the sick and injured, not a general promotion of health.

Additionally, the Legislature has since defined "health care provider" under SDCL 34–12D–1(3):

> any person who is licensed, certified or otherwise authorized by law to administer health care in the ordinary course of business or practice of a profession, including any person employed by or acting for any such authorized person[.]

"Health care facility" in 1991 was defined per SDCL 34–12–1.1(3) as:

> any institution, sanitarium, maternity home, ambulatory surgery center, chemical dependency treatment facility, hospital,

nursing home, supervised personal care facility, place, building or agency in which any accommodation is maintained, furnished or offered for the hospitalization, nursing care or supervised care of the sick or injured[.]

As these definitions consistently show, the care and treatment of the sick and injured is the very purpose of a health care facility. Though these definitions are from other chapters in the Code, they are proffered for determining legislative intent. *In re Kindle,* 509 N.W.2d 278 (S.D.1993).

Not only does the trial court's definition conflict with the statutes, it is overly broad. Any fitness activity would be tax exempt under the trial court's definition. Such "exemption" would include these Center activities: "Dive-in Movies," "Santa Soccer," "Beachball Volleyball," "Splashbash Parties," "Birthday Parties," basketball and racquetball. When the Legislature provided a tax exemption for human health care and human health care related purposes, it did not intend to give a tax exemption for "Splashbash Parties." Despite the Center's mandate on health over physique, we find it contrary to SDCL 34–12D–1 to associate these fitness activities with human health care per SDCL 10–4–9.3.

Albeit "preventive medicine" may be the "current" trend, rather than the traditional method, of disease prevention, we would be guilty of enlarging SDCL 10–4–9.3 beyond its face if we permitted tax exemptions for these activities simply because they provide some health benefits. *Matter of Estate of Pejsa,* 459 N.W.2d 243, 246 (S.D.1990); *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985). Rather, we view that statutory duty to rest with the Legislature.

Following the logic of the trial court's definition, we note a conflict with the Center's own stipulation that the cafeteria and pro shop are not tax exempt. Presumably under the trial court's definition, if the cafeteria provided health foods related to maintaining a state of soundness of the mind and body, the cafeteria would be tax exempt. Again, if the pro shop sold items used for general fitness, which related to maintaining a state of soundness of the mind and body, the pro shop would be tax exempt. As exemplified, the trial court's definition encompasses a broad spectrum of "health care."

We find that the Center inter-mixes too many activities that go beyond the "natural and practical meaning to effectuate the purpose for which [an] exemption [is] granted." *Lutherans Outdoors,* 475 N.W.2d at 145.

III. *Calculations are to be based upon statutory use.*

■ Board insists that because 75% of those using the facility did not have a pre-existing health problem or physician referral, 75% of the remaining square footage is taxable. In *Lutherans Outdoors,* 475 N.W.2d at 146, we held, under SDCL 10–4–12, the extent of exemption of a church camp did not depend on the percentage of religious society members among those who made use of the facility. We decline to make similar calculations here. Under SDCL 10–4–12, the extent of the exemption for a mixed use facility depends on the percentage of *time* the facility is used for [tax-exempt] purposes. *Lutherans Outdoors,* 475 N.W.2d at 146 (original emphasis). Those areas that are exempt for primarily health care purposes remain exempt *providing they are used in that manner.*

IV. *Wellness Center does not qualify as a charitable organization.*

■ Initially, the trial court declined to decide if the Center is a charitable organization. However, on the same day the Findings of Fact and Conclusions of Law were issued, the trial court signed Additional Conclusions of Law explicitly stating that the Center is used for charitable purposes and therefore tax exempt. At the end of these conclusions of law, the trial court wrote, "While the court finds these Findings and Conclusions to be a correct statement of the law and facts, the court did not find it necessary to base its ruling upon these facts." Nevertheless, the trial court ruled that the Center qualifies as a charitable organization under SDCL 10–4–9.1 which provides:

Property owned by a public charity and used for charitable purposes is exempt

from taxation. A public charity is any organization or society which devotes its resources to the relief of the poor, distressed or underprivileged. A public charity must receive a majority of its revenue from donations, public funds, membership fees or program fees generated solely to cover operating expenses; it must lessen a governmental burden by providing its services to people who would otherwise use governmental services; it must offer its services to people regardless of their ability to pay for such services; it must be nonprofit and recognized as an exempt organization under section 501(c)(3) of the United States Internal Revenue Code of 1954, as amended, and in effect on January 1, 1986; and it may not have any of its assets available to any private interest.

Thus, the Center must offer its services to people regardless of their ability to pay, devote its resources to the relief of the poor, and lessen a governmental burden. Based on this criteria, we must determine if the charitable label is supported by the findings of fact. *R & S Construction Co. v. BDL Enterprises*, 500 N.W.2d 628 (S.D.1993).

At the time of the trial, the Center's membership fees were:

| | Joining Fee | Annual Fee |
|----------|-------------|------------|
| Single: | $150 | $444 |
| Couple: | 250 | 588 |
| Family: | 300 | 708 |

Thus, a single membership alone would cost nearly $600 for the first year. Despite this expense, the Center has a policy that no person will be denied membership based upon an inability to pay. Of the Center's 2,669 memberships involving 4,836 members, *only fourteen memberships were reduced or free*. This equates to a mere one-half of one percent of the total membership, yet the Center claims it has never turned anyone away. Apparently, this community service is not well-publicized. We cannot agree that such a minimal element of giving meets the requisite of SDCL 10–4–9.1. Regardless, reduced memberships hardly constitute *devoting* relief to the poor.

No facts show the Center to provide a service that would otherwise be provided by the government. Although Minnehaha County does provide swimming and some fitness activities, the Center does not alleviate a governmental burden merely by providing some similar services. Federal Express delivers letters and packages, but does not achieve charitable status by competing with the United States Postal Service.

A charitable exemption "is granted as a concession by government in return for unselfish ministrations to human welfare," *In re South Dakota Sigma Chapter House Ass'n,* 65 S.D. 559, 566, 276 N.W. 258, 262 (1937), and is "accorded as a matter of legislative grace and not as a matter of tax payer right." *Matter of Pam Oil, Inc.,* 459 N.W.2d 251, 255 (S.D.1990). We do not impugn the Center for its good acts; however, the Center does not primarily devote its resources to the poor, distressed or underprivileged. We find that the facts do not support the conclusion that the Center is a charitable organization per SDCL 10–4–9.1. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292 (S.D.1982).

Reversed and remanded.

MILLER, C.J., SABERS and AMUNDSON, JJ., and TUCKER, Circuit Judge, concur.

TUCKER, Circuit Judge, sitting for WUEST, J., disqualified.